## Case No. 2,752.

### The CITY OF HARTFORD.

[11 Blatchf. 72;[1] 17 Int. Rev. Rec. 125.]

Circuit Court, S. D. New York. April 7, 1873.[2]

COLLISION—STEAMBOAT AND TUG CROSSING—
WHISTLES—SPEED—MUTUAL FAULT.

1. A steamtug, either meeting a steamboat end on, or crossing her course, having the steamboat on her starboard side, and, in the latter case, bound to keep out of the way, held in fault for starboarding, instead of porting, and thus contributing to a collision between a vessel in tow of her and such steamboat.

[Cited in The Fanwood, 28 Fed. 375; The Baltimore, 34 Fed. 662.]

2. The steamtug blew two whistles, on starboarding. The steamboat responded by two whistles, and, although then on a port helm, starboarded herself: *Held*, that, although the steamboat was in fault for assenting, by her two whistles, yet that fact did not absolve the steamtug from the fault she so committed.

[Cited in The Nereus, 23 Fed. 455; Conover v. The City of Chester, 24 Fed. 92; The Galileo, Id. 392; The Greenpoint, 31 Fed. 232; The St. Johns, 34 Fed. 766; The Sammie, 37 Fed. 909.]

3. The steamboat was also in fault for too great speed, and for not stopping or porting. The steamtug was also in fault for not stopping sooner than she did.

4. The damages were apportioned. The value of the steamtug being less than one-half of the damages, whether recourse can be had to the steamboat, to make up the rest of such one-half, in addition to her own one-half, quere.

[Appeal from the district court of the United States for the southern district of New York.

[In admiralty. Libels by Hudson S. Ride-

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[2] [Modifying the decree in Case No. 2,748. Affirmed in The City of Hartford and The Unit, 97 U. S. 323.]

out, owner of the schooner Alice S. Oakes, and by Charles Robinson, owner of her cargo, against the steamboat City of Hartford and the steamtug Unit, to recover for a loss sustained by collision. The district court decreed in favor of libelants against the City of Hartford, ordered a reference to ascertain the damages. and dismissed the libels as to the Unit. See Case No. 2,748. From this decree an appeal was taken to this court.]

Joseph H. Choate and James C. Carter, for libellants.

Richard H. Huntley, for the City of Hartford.

Charles Donohue, for the Unit.

WOODRUFF, Circuit Judge. I concur fully with the conclusion of the judge of the district court that the City of Hartford [Case No. 2,748] was in fault, and that her fault contributed to the collision which caused the loss sustained by the respective libellants. But I am unable to find that the Unit was without fault therein. Her navigators saw the City of Hartford coming down the river, at such a distance that there was time for whatever manoeuvre, by either or both vessels, was necessary to avoid collision. The direction of the two courses was such, that one of two situations was involved—that is to say, first, they were approaching so nearly end on, as to involve danger of collision; or, second, they were crossing each other's course, so as to involve risk of collision. Doubtless, the latter best describes their situation; but, either situation leads to the same conclusion.

(1st.) If regarded as approaching nearly end on, then it was the duty of each to port the helm, and go to the right, and so pass port to port. This the City of Hartford attempted to do, (being, in fact, already on a sheer to starboard.) The Unit, in plain violation of the rule, attempted the opposite manoeuvre, and starboarded, with intent to go to the left, and pass starboard to starboard. This was wrong. She had no right to make such an attempt, without, at the same time, assuming the risk of its successful accomplishment, unless defeated in her endeavor by an unwarranted counter movement of the other vessel.

(2d.) If the vessels be regarded as crossing, so as to involve risk of collision, then it was the clear duty of the Unit, having the City of Hartford on her starboard side. to keep out of the way of the City of Hartford, and the like clear duty of the latter to keep her course, unless the conduct of the Unit created a duty to depart from such course, or to stop. The City of Hartford was keeping her course, and, in fact, attempted to indicate to the Unit her purpose to do so, and even give the Unit a wider berth, by increasing her own swing to westward, when she was admonished that the Unit proposed to go to the left instead of the right, and to cross her bows. The primary fault was on the part of the Unit, in making this attempt.

Upon the evidence, I cannot doubt, that, if the City of Hartford had continued on her port helm, as she was when she came in sight, and the Unit had even done nothing, no collision would have happened. Indeed, the witnesses whom the Unit herself called, to charge fault on the City of Hartford, make her fault, not that she ought to have starboarded, but that she did so, when they say she should have ported and swung towards New York, which, in fact, she was doing when arrested by the manoeuvres of the Unit. This fault of the Unit is the more striking, when it is considered that the pilot of the Unit knew and recognized the City of Hartford, which was a regular passenger and freight boat between Hartford, Connecticut, and the city of New York, and knew where was her regular landing place, near Peck slip, on the New York side, and, therefore, that her regular course would take her to the westward, across the river. To attempt, then, to take the Unit to the westward, across her bows, was not only a violation of the first rule above referred to, calling upon the Unit to keep to the right, but it was choosing the course which, (under the rule requiring the Unit to keep out of the way,) was least likely to avoid the other vessel, and most likely to embarrass her in proceeding to her destination.

Thus far, I have said nothing of the signals given by either. On that subject, I observe, that the City of Hartford, rightly and, in all respects, properly, intended to go to starboard, (to the port of the Unit,) and was doing so, and blew one whistle, the proper signal to indicate to the Unit her intention. Let it be conceded that her signal was not heard, that did not justify an attempt by the Unit to cross her bows, if that was not a safe attempt. That it was not a safe endeavor is conclusively proved by the fact, that, although, in compliance with the request of the Unit, the City of Hartford cooperated with her, to enable her to do so, a collision was the result, and, as I think, this also shows what I have before stated, that, had not the City of Hartford been diverted from her course by this attempt of the Unit, no collision would have occurred. But, it is said, that, when the Unit blew two whistles, to indicate her design to go to the westward, the City of Hartford assented to her proposition, as a safe and proper one. I concur with the court below, that the City of Hartford ought not to have assented. She ought either to have kept off towards New York, or to have stopped. But, I cannot concede that this excuses the Unit for making the unwise endeavor. It comes with ill grace from her to say, that the fault is solely due to the City of Hartford, for causing a collision, by doing what she (the Unit) expressly requested her to do. The manoeuvre was fatal. It was an unskilful and improper one, under the circumstances. In the most favorable view for the Unit, it was an error in which

both concurred. Observations pertinent to the case of an erroneous manoeuvre, proposed by one vessel and assented to by the other, resulting in collision, and held to involve mutual or concurring fault, were made in The Albermarle [Case No. 135]. I feel great doubt, whether those who navigated the Unit acted upon the signal which was given by herself, and whether, in fact, there was not great incompetency, and even mistake, in giving the signal at all. Certainly, the City of Hartford, by assenting to the manoeuvre proposed by the Unit, no more guaranteed its safety and propriety than the Unit did in making the proposition. The City of Hartford had, surely, as clear a right to accept the two whistles as an assurance by the Unit, that, with her co-operation, the Unit could and would pass to the west, as the Unit had to infer from the response, that the City of Hartford could and would pass to the east.

The conclusion seems to me inevitable, that both were in fault. The City of Hartford ought not to have come down at such speed, she ought not to have accepted the proposal of the Unit, and she ought either to have stopped or to have kept off to the westward. The Unit ought not to have made the attempt to go to the west, and she too, in view of her mistaken signal, ought, (after the signal was given,) to have kept off, or stopped entirely much sooner than she did. It is doubtful whether, after she had called the City of Hartford from her course, she did not herself see her error, and neglect to go to the westward at all, as her signal promised. But if she found she could not, in that way, escape the consequences of her own mistake, she should have instantly given signals of alarm, and stopped. Although those signals might have been ineffectual, they might have disclosed the error to the City of Hartford, and induced her sooner to stop and back, increasing the chances of safety. The decree should, therefore, direct contribution; and, as the counsel expressed a desire to be heard on the question whether, as the value of the Unit is less than one-half the damages, the libellants should have recourse to the City of Hartford for the deficiency, I will hear them on that subject, on the settlement of the decree. I ought to add, that I find no sufficient reason for disturbing the report of the commissioner upon the amount of the damages.

[NOTE. On the settlement of the decree the court denied the contention of libelants as to their right of recourse to the steamboat in the event that the tug was not of sufficient value to pay the moiety of the damages awarded. See Case No. 2,753.

[An appeal was taken to the supreme court from the final decree herein, which was affirmed in so far as it declared both steamer and tug in fault, and awarded damages against both, and a division thereof, but sustained the contention of libelants as to the deficiency. See note to Case No. 2,753, next following. The City of Hartford and The Unit, 97 U. S. 323.]