## THE GREENPOINT.[1]

### MURPHY and others *v.* THE GREENPOINT.

#### (*District Court, S. D. New York.* April 27, 1887.)

**1. COLLISION—STEAMERS—LEAVING PIER—UNJUSTIFIABLE START.**
The steamer G. R. left her pier in the East river on the ebb-tide, as the tug Greenpoint was coming up about the middle of the stream, and nearly abreast of the pier. The G. R. blew two blasts to indicate that she would go ahead of the tug, to which the latter replied with two. In the strong tide the G. R. drifted a little down and, before she got headed up river, collided with the Greenpoint, which backed, but was unable to avoid collision. *Held,* that the start of the G. R. was dangerous and unjustifiable, having reference to the position of the Greenpoint, unless she should proceed slowly, and go astern of the tug; that the tug was at first entitled to assume that the G. R. could keep out of her way by going ahead, and when danger was apparent the tug did what she could to avoid collision, which was all that was required of her, notwithstanding her previous assenting signals; and that this assent meant only that she would do nothing to embarrass the G. R. in keeping out of the way by going ahead of her.

**2. SAME—INSPECTOR'S RULES—RULES OF CONGRESS—ASSENTING SIGNALS.**
The inspector's rules as to whistles do not repeal or supersede the old rules of navigation enacted by congress, and still applicable to harbors, and do not purport to do so. Two whistles, assented to, do not shift the burden of keeping out of the way. The duty to stop and back arises wholly from the danger of collision, and begins when that danger is obvious. It is the same whether the prior signal was of one blast or two.

**3. SAME—INTERNATIONAL RULES—APPLICABILITY TO HARBORS.**
The new international rules are not applicable to harbors in merely local navigation.

In Admiralty.

*Wilcox, Adams & Macklin,* for libelant.

*Jas. K. Hill, Wing & Shoudy,* for the Greenpoint.

BROWN, J. 1. The Grand Republic, in leaving the slip at pier 24, East river, heading straight across the river, and bound eastward, was required by the rules of navigation to keep out of the way of other vessels coming up from below, because they were on her starboard hand. In the strong ebb she could not avoid sagging down some, and the evidence shows she did so. The Greenpoint was not over 200 feet below her, and was probably less, when the Grand Republic started. The Greenpoint was then in mid-river, where the law required her to be, and was nearly abreast of pier 24.

2. The event shows that the start of the Grand Republic was dangerous and unjustifiable in the strong ebb, having reference to the position of the Greenpoint in mid-river, nearly abreast of pier 24, *i. e.,* unless she should proceed slowly, and go astern of the Greenpoint. She was to blame for undertaking to go ahead of the Greenpoint, under such circumstances. She started to go out of the slip upon her own responsibility, without any previous signal or assent from the Greenpoint. *The Boston,* Olcott, 408, 412; *The Belleville,* Newb. Adm. 500; *The Nereus,* 23 Fed. Rep. 456; *The Darcy,* 29 Fed. Rep. 644.

3. The Greenpoint's answer by two blasts to the Grand Republic's pre-

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

vious signal of two blasts, when the latter was out of the slip, or partly out of it, did not of itself change any of the legal obligations of the Greenpoint, nor shift the burden of keeping out of the way, under the old rules of navigation relating to harbors; nor did it relieve the Grand Republic of her duty to keep out of the way by her own maneuvers alone, nor guaranty the success of her maneuvers. *City of Hartford*, 11 Blatchf. 72; *The Garden City*, 19 Fed. Rep. 529, 531; *The Garlick*, 20 Fed. Rep. 649; *The Payne*, Id. 650. The inspector's rules as to whistles do not repeal or supersede the rules of navigation enacted by congress, and do not purport to do so. Article 19 of the new International Rules is not applicable to harbors in merely local navigation. See Act of March 3, 1885, preamble and section 2.

4. The only duties of the Greenpoint were, *first*, to keep her course; and, *second*, to do what she could to avoid collision when the danger of it became apparent. The latter duty is precisely the same, whether the previous assenting signals were of one blast or of two blasts. *The Nereus*, 23 Fed. Rep. 456.

5. I cannot find, upon the proofs, any satisfactory evidence of fault in the Greenpoint. She could not tell precisely what the Grand Republic was able to do in her maneuvers. As soon, I think, as the danger of collision was apparent, the Greenpoint stopped and reversed. She did so as soon, I think, as could reasonably have been judged necessary, considering what the Grand Republic at first would be presumed able to do. For a certain time the Greenpoint had a right to rely upon the ability of the Grand Republic to do what she undertook to do, viz., go ahead without injury to the Greenpoint. Per BETTS, J., *The Argus*, Olcott, 313; *The Baltic*, 2 Ben. 98; *The Ulster*, 1 Mar. L. Cas. 234; *The Servia*, 30 Fed. Rep. 502.

The Greenpoint stopped very soon, if not at once, after the first signal of two whistles, and in a few seconds afterwards she reversed. This was, I think, all that was reasonably required of the tug, her captain not at first knowing just what the Greenpoint could do in turning. Her porting at the last was a wise maneuver, and evidently prevented greater damage.

The libel must be dismissed, with costs.