## THE ADMIRAL.[1]

### GROVE et al. v. THE ADMIRAL.

*(District Court, E. D. New York.   July 23, 1889.)*

1. COLLISION—CROSSING COURSE.

   The lighter A. was going up the East river along the Brooklyn piers, and the water-boat C. was crossing the river from New York to Brooklyn, and had the A. on her starboard hand.   The C. blew two whistles twice without receiving a reply.   To her third signal of two blasts the A. replied with two. The C. thereupon starboarded hard and opened her engine in an endeavor to cross the A.'s bows, and the latter ported.   The vessels came together and the C. was sunk.   *Held*, that the C., being bound to avoid the A., took upon herself the risk of an attempt to cross the latter's bows, and could not recover.

2. SAME—SIGNALS.

   When a boat, bound by rule to avoid another, signals that she is going to cross the latter's bows, an assenting signal by the boat having the right of way is merely an announcement to the other that her intention is known.   It gives her no immunity from the responsibility cast upon her by law, and constitutes no fault in the event of subsequent collision.

In Admiralty.

Action by Francis H. Grove and others for damages caused by collision.

*Hobbs & Gifford* and *R. D. Benedict*, for libelants.

*Wing, Shoudy & Putnam*, *H. Putnam*, and *C. C. Burlingham*, for claimants.

BENEDICT, J.   This is an action brought by the owners of the water-boat Croton to recover for the sinking of that boat in a collision with the lighter Admiral that occurred in the East river on the 13th day of February, 1888.   The Admiral was proceeding up the East river along the piers.   The Croton was crossing the river from the New York shore, bound to the slip at Prentice's Stores, on the Brooklyn side.   An examination of the evidence shows the collision to have been occasioned by the fault of the Croton, and not by the fault of the Admiral.   The Croton was on a course crossing the course of the Admiral, and having the Admiral on her starboard side.   Although she, as she says, blew two whistles to the Admiral twice without receiving a reply, she kept on without change of course or speed, giving to the Admiral a third signal, to which the Admiral then replied by two.   It is argued on behalf of the Croton that the failure of the Admiral to reply to her signal shows now that the Croton was not seen by the Admiral.   If so, it showed the same thing then. The Croton, therefore, attempted to cross the bows of a vessel near at hand, and known by her to be ignorant of her presence, and of course she assumed the risk of crossing in safety, without any action on the part of the Admiral.   Again, when after the Admiral's delay to reply

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

to two of her signals, upon receiving a reply to her third signal, she starboarded hard and opened her engine in an endeavor to cross the Admiral's bows, she took the risk upon herself, and failing is responsible for the result. The reply of the Admiral to her signal gave the Croton no immunity from the responsibility cast upon her by the law. A mistaken idea seems to be entertained in behalf of the Croton that it was a fault on the part of the Admiral to blow two whistles in reply to the two whistles of the Croton, unless it was the judgment of the Admiral that there was room and time for the Croton to pass ahead in safety. It was not for the Admiral, but for the Croton, to determine whether there was room and time for her to pass the Admiral's bows in safety. Her signal to the Admiral announced her determination of that question, and the reply of the Admiral simply informed her that her determination was known to the Admiral, and constituted no fault. It is further claimed, on behalf of the Croton, that the Admiral was in fault, because, after blowing her two whistles in reply to the Croton's signal, she ported her helm, when, by starboarding, she would have assisted the Croton in her attempt to cross the Admiral's bows. The answer here is that it was no part of the duty of the Admiral to assist the Croton. The limit of the obligation upon the Admiral was, when danger of collision appeared to her, to adopt such measures as she had at command to avoid collision. Upon the evidence I doubt whether it was a mistake on the part of the Admiral to port when the Croton starboarded to cross her bows, but if it was a mistake it is not to be laid at the door of the Admiral as a fault. If it was a mistake, and if in the absence of that mistake the Croton would have passed in safety, the mistake is not to be attributed to the Admiral, but to the Croton, whose unwise action alone required the Admiral to determine a question that otherwise would not have been presented. The libel must be dismissed, with costs.