### THE NUTMEG STATE.

### THE MONITOR.

#### HARRIS et al. v. THE NUTMEG STATE.

#### TRACY et al. v. THE NUTMEG STATE et al.

(District Court, S. D. New York. June 20, 1894.)

COLLISION—STEAM VESSELS CROSSING—DUTY TO MAINTAIN SPEED.

    A steamtug gave two whistles to a steamboat on her starboard hand, and on a crossing course, and then slowed her engines. *Held* in fault for the collision which ensued, because of such slowing; it being directly contrary to the meaning of her signal, and a thwarting of the other vessel's attempt to obey.

Libel against the steamer Nutmeg State for damages to certain barges in the tow of the steamtug Monitor. The damages were caused by a collision between the Monitor and the Nutmeg State. The Monitor was made a defendant upon the petition of the Nutmeg State.

Stewart & Macklin, for Tracy and others.
Carpenter & Mosher, for the Nutmeg State.
James Armstrong, for the Monitor.

BROWN, District Judge. On the 26th of December, 1893, at about half past 2 in the afternoon, as the steamtug Monitor, with barges belonging to libelants in tow on each side of her, was coming down about the middle of the East river, in the ebb tide, she saw, when about off pier 49, the steamer Nutmeg State coming out of her slip at pier 35, on the New York side. When the latter had cleared her slip, the Monitor gave her a signal of two whistles, to which the Nutmeg State answered with two, signifying that

she would go astern of the Monitor. The pilot of the Monitor starboarded his wheel, but soon after slowed his engine, because, as he says, he did not see the Nutmeg State rounding to port as much as he expected, and he wished to have his engine in condition to back immediately, if necessary, without liability to catch on the center. Soon afterwards the Nutmeg State struck the side of the barge which was on the starboard side of the Monitor, and the shock damaged two boats on the Monitor's port side also. The above libels were filed against the Nutmeg State to recover the damages; and the Monitor was brought in as defendant upon the petition of the latter.

I am satisfied upon the evidence that this collision was brought about by the act of the Monitor in slowing her speed, after she had given a signal of two whistles to the Nutmeg State, thereby, in effect, agreeing that she would go ahead of her. The evidence leaves no doubt that but for this slowing the Nutmeg State would have passed clear astern. The slowing of the Monitor was directly contrary to the meaning of her signal, that she would go ahead. It was essentially a thwarting maneuver, which places upon her the fault for the collision. The Monitor was tardy in giving her signal; for though her pilot saw the Nutmeg State coming out before she was out of her slip, he delayed his whistle till she was well outside of it. The St. Johns, 34 Fed. 763, affirmed 42 Fed. 75; The Britannia, 34 Fed. 546, 556, affirmed 153 U. S. 130, 14 Sup. Ct. 795.

I do not perceive that the Nutmeg State was to blame. The contrary maneuver of the Monitor in slowing was the last thing that the Nutmeg State was to expect. She had come out of her slip under a hard-a-starboard wheel, and kept it until collision. The river there being only about 1,300 feet wide, and the Monitor near the middle, there was very little space for the Nutmeg State to maneuver after she came out. She could not by reversing have stopped in time after the slowing of the Monitor was perceived; only 250 to 300 feet distant, she was already in extremis, and reversing would have brought her head to starboard and made a worse collision probable. I think under the special circumstances the master's judgment was correct; that his only chance of escape was to continue on with a hard-a-starboard wheel. That he did not escape was not his fault, but the Monitor's.

The libelants are, therefore, entitled to judgment against the Monitor; and the Nutmeg State is discharged.

Decree accordingly.