## THE GLADIATOR.

## THE TRANSFER NO. 10.

(Circuit Court of Appeals, Second Circuit.  February 10, 1913.)

Nos. 69, 70.

COLLISION (§ 95*)—TUGS WITH TOWS MEETING—PASSING SIGNALS.

A collision between car floats in tow of two transfer tugs in East River at night *held* due solely to the fault of one of the tugs, which, when they were nearing each other substantially head on, gave a signal for passing starboard to starboard and kept on without assent to it.

[Ed. Note.—For other cases, see Collision; Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeals from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Suit for collision by the New York, New Haven & Hartford Railroad Company, owner of steam tug Transfer No. 10, against the steam tug Gladiator, the River & Harbor Transportation Company, claimant; and cross-libel against the Transfer No. 10.  Decree for respondent on the cross-libel, and libelant appeals.  Affirmed.

The following is the opinion of Hand, District Judge, in the court below.

This is a libel in rem on behalf of the New York, New Haven & Hartford Railroad Company against the steam tug Gladiator for collision in the East River at 1 a. m. on May 11, 1908, upon a flood tide and some 700 or 800 feet off 25th or 26th street.  The libelant's tug Transfer 10 was going up the East River with a car float on either hand extending some 100 feet beyond her bow.  She had laid a course from the buoy off Tenth street to Thirty-Fourth street, so as to get well over on the Manhattan side and to go up the west channel of Blackwell's Island.

The tug Gladiator, belonging to the claimant, also with a car float on her starboard hand, had left the Long Island ferry slip and had come down the East River.  The tows came into collision by the starboard bow of the Gladiator's float striking the starboard float of No. 10 about amidships. The angle of the collision was approximately 45 degrees.  Each tug says that he did not change his course from the time of seeing the other tug. There is no evidence to contradict that testimony.  Transfer 10 when she got near to Twenty-Third street had to stop so as to allow a Twenty-Third Street ferryboat to come into her slip.  She exchanged single blasts with that ferryboat and let her pass, then resumed her speed.  Up to that time she had not seen the Gladiator.  The Gladiator, on the other hand, as she came out of her slip, found a Greenpoint ferryboat going to the eastward and into her own slip, and she also had to wait until that boat had passed.  In doing so she went further out into the stream, so that, when she was headed down and straightened out on her course, she was somewhat on the New York side of mid-channel.

The stories of the two crews as to the signals are quite divergent.  Transfer No. 10 says that when she first sighted the Gladiator she was about three points on his starboard bow.  Thinking that he could safely pass starboard to starboard, he blew two whistles, to which he got no answer.  This

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

signal he repeated, and he was at once answered by a single whistle from the Gladiator. At that time he could see both the red and green lights of the Gladiator. and he thinks he was about 1,200 feet off the New York shore. Seeing that the crossing of signals would result in a collision, he blew his alarm signal at once, and almost simultaneously stopped and began backing. He had got no sternway at the time of the collision, but had substantially checked his speed.

The story of the Gladiator's master is that he also saw the two side lights. of the Transfer as soon as the Twenty-Third Street ferryboat uncovered her. As she then bore on his port hand, he gave her one whistle, to which she responded. He continued on his course until some time afterwards he says he got a signal of two whistles, indicating that the Transfer was about to cross his bow. Shortly after the red light was shut out, and he blew an alarm and stopped and backed. At that time it was too late to avoid collision. The inference of the Gladiator is that the Transfer tried to cross her bows at the last minute. This I do not believe, and it seems to me a wholly unreasonable supposition to make. If the Gladiator, on the other hand, changed her course to starboard, she certainly was in fault, because there would be every reason in that case to suppose that the estimate of the Transfer was correct, that the boats otherwise would have passed safely starboard to starboard. But, as I have said, I cannot see any just reason to disregard the testimony of the crew of the Gladiator that they kept their course. If so, the case is one in which vessels about to pass head on do not pass port to port, but one of them selects a course starboard to starboard. It is quite clear that in such a case the vessel so selecting deviates from the normal navigation and does so at her risk, and that if collision ensues she is responsible for it, unless, of course, her change of purpose is clear enough in season for the other to accommodate herself to her obvious intention. Some of the distances given by the Gladiator do not altogether reconcile this interpretation of the testimony. It is hard to see how they got so far inshore as they think they did, unless there was a change of course. This undoubtedly made the question as to whether or not there was a change of course somewhat uncertain; but that doubt is allayed, I think, by two facts: First, because of the testimony of the crew of the Gladiator, which is not contradicted by anything that was seen by the Transfer; and, second, because of the fact that both crews say that from the outset they saw both side lights of the other tug. This could not have been so if there had been, after the time when they came in sight of each other, any substantial change in their course.

The result is that I shall hold the Transfer in fault, and the libel will be dismissed in accordance with that finding, and a decree go upon the cross-libel.

J. T. Kilbreth, of New York City, for appellant.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and Roderick Terry, Jr., both of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

PER CURIAM. We concur in Judge Hand's finding and conclusion that this was a head-on situation, where the Transfer initiated a starboard to starboard course and kept on without assent to it, and that the Gladiator, having kept her course, was free from fault.

It may be noted that, if the situation were as stated in appellant's brief—i. e., the Transfer showing a starboard light only to both lights of the Gladiator—then the vessels would be on crossing courses, and the Gladiator the privileged vessel, in which case the conclusion reached as to fault would be the same. We do not think the Gladiator

was far enough west of the center of the river to constitute a violation of the East River statute. Section 757 of the Consolidation Act; chapter 410, Laws N. Y. 1882.

Decree affirmed, with costs.