**THE PROMETHEUS. THE MARACAIBO. ATLANTIC & CARIBBEAN STEAM NAV. CO. v. UNITED STATES.**

(District Court, S. D. New York. April 5, 1926.)

Collision ⬤═91—Collision between meeting steamships in East River held solely due to fault of one in attempting, without warrant, to pass starboard to starboard.

A collision in East River between meeting steamships *held* due solely to fault of the ascending vessel in signaling for passing starboard to starboard, without any special circumstances justifying departure from the general

rule, and in directing her course to port without receiving the assent of the other vessel.

In Admiralty. Suit for collision by the United States, as owner of the steamship Prometheus, against the steamship Maracaibo, and the Atlantic & Caribbean Steam Navigation Company, claimant, and cross-libel by the Atlantic & Carribbean Steam Navigation Company against the United States. Libel dismissed, and decree rendered for cross-libelant.

Emory R. Buckner, U. S. Atty., of New York City (Charles E. Wythe, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Haight, Smith, Griffin & Deming, of New York City (Clarence Smith, of New York City, and J. McKeon, Jr., of counsel), for libelant Atlantic & Caribbean Steam Nav. Co.

AUGUSTUS N. HAND, District Judge. The Prometheus was proceeding up the deep water range in the East River, New York harbor, to the Navy Yard. She saw the Maracaibo coming down, blew her two whistles, and, though at first receiving no answer went to port for the purpose of passing between the Maracaibo and the New York shore. This is all evident from the story of the government's own witnesses. Thereafter, according to the story of the Prometheus, the Maracaibo blew one whistle and then another signal whistle while working to starboard under a port helm. When a collision became imminent, the Maracaibo stopped and reversed, and the Prometheus put her port engine ahead and her starboard engine in reverse so as to swing her bow, if possible, away from the Maracaibo.

The Maracaibo's witnesses indicate that she blew her single whistles first, and that the Prometheus crossed this signal. However this may be, the Prometheus had no right except under special circumstances of the most unusual nature to insist upon a starboard to starboard passing when the vessels were approaching one another head on. The special circumstances relied upon by the libelant are the presence of a drill boat in the East River on the starboard hand of the Prometheus and two ferryboats crossing ahead, but there were 500 feet of water between the center of the deep-water range and the drill boat, and the ferries were out of the way before the two steamships had to pass one another. The Prometheus preferred to pass near the New York shore, probably on account of the ebb tide, but the tide involved no unusual conditions, and gave the Prometheus no right to insist

upon a special course of navigation. There was room enough next the drill boat for the Prometheus to pass safely on the starboard side of the range, and the ferries were not in the way. The Maracaibo backed for three minutes by her log before the collision, and she began to back as soon as it was apparent that the Prometheus had determined to disregard her whistles. Even if the Prometheus had a right to initiate the maneuver she attempted, she had no right to swing on her course to port as she did until she had an answer from the Maracaibo. The Johnson, 76 U. S. (9 Wall.) at page 155 (19 L. Ed. 610), The Gladiator, 203 F. 690, 121 C. C. A. 648.

Lieutenant Commander Lorain Anderson, U. S. N., who was the navigator of the Prometheus, in his testimony before the board of investigation, said:

"I first sighted the Maracaibo dead ahead over the center of the Hamilton Line ferryboat. The drill barge off Diamond Reef was then about 300 yards away, a little on our starboard bow. The Maracaibo was, I should judge, about 800 yards distant, having just shown up through the mist. It was impossible to go to starboard because of the dredge and the north-bound ferry. The captain sounded two blasts, which the Maracaibo did not answer. The Maracaibo held her course, and a few seconds after sounding the two blasts we directed our course to port. Had the Maracaibo held the course she was on when first sighted, which course was as closely as I could judge, although the low visibility did not allow of seeing the range marks, exactly on the deep-water range, she would have passed clear of us and all danger that I could see. About 45 seconds after we had sounded our two whistles to her the Maracaibo sounded one blast and simultaneously started turning to starboard, We then went full speed with full left rudder, going so close to the New York docks that it required a full reversal of rudder to clear them. * * * "

It is to be noted that the navigator of the Prometheus in no way intimates that the latter did not violate the ordinary rule. He attempts, I think, as did the captain of the Prometheus, to create a case of special circumstance out of a natural preference on the part of the Prometheus, because she was a larger vessel, to go nowhere near the drill boat, to avoid the force of the tide on her port bow which would tend to swing her toward the drill boat, and in general to obtain certain advantages. It may be conceded that the Pro-

metheus was more difficult to handle than a smaller vessel in a channel that was none too wide, but I cannot find any evidence to show that she had not plenty of room to pass on the starboard side of the deep-water range.

There has been only one doubt in my mind, and that is whether the Maracaibo did enough to avoid the accident, and whether the damages should be divided upon that theory.

Captain Foley's testimony indicates that after the ferries had got out of the way and the clear water opened between the vessels, they were between 800 and 1,000 yards apart. At that time Foley says he said to his pilot: "'Blow two whistles,' and two whistles were blown." He also says that after the ship had begun to swing appreciably under this starboard helm, the Maracaibo blew one blast and was apparently already swinging to starboard.

"Q. That was the first blast you had heard from the Maracaibo? A. That was the first blast I had heard from the Maracaibo, and simultaneously with my turning it, the executive officer exclaimed, 'She has crossed your whistle.' "

According to this story, the Maracaibo blew just about as she saw that the Prometheus was "swinging appreciably" under her starboard helm.

When the Prometheus was insisting upon an indefensible course, and the Maracaibo proposed the correct course as soon as she saw that the Prometheus was swinging "appreciably" toward the New York shore, I think it would be a harsh rule that would hold the Maracaibo in any respect responsible for the accident. The Prometheus clearly proposed irregular mode of navigation and actually entered upon it without the acquiescence of the Maracaibo. The Maracaibo should not, in my opinion, be penalized, even if she might perhaps have acted more quickly, when the fault of the Prometheus is so clear.

Furthermore, if the master of the Prometheus regarded it as unsafe to pass near the derrick and the shoal water when there was a strong ebb tide, I see nothing to have prevented his stopping when he first saw the Maracaibo. He was then 300 yards below the dredge according to the testimony of his navigator, and apparently could have safely let the Maracaibo pass on his port side.

I find the Prometheus solely at fault, and direct that the libel be dismissed with costs, and an interlocutory decree pass upon the cross-libel with the usual reference.