# LEHIGH COAL & NAVIGATION CO. v. COMPAGNIE GÉNÉRALE TRANSATLANTIQUE et al. LA FRANCE. THE NATHANIEL P. DOANE.

(Circuit Court of Appeals, Second Circuit. May 3, 1926.)

No. 271.

**1. Collision** ⊂⇒95(1)—Custom of tug of making starboad to starboard passing in narrow channel, where more convenient, held violative of narrow channel rule (Comp. St. § 7899, art. 25).

Narrow channel rule (Comp. St. § 7899, art. 25), requiring travel on starboard side of fairway when safe and practicable, is violated by tug attempting to make starboard to starboard passing in narrow channel, merely because more convenient, in view of its strength and weight of its tow, notwithstanding it follows a custom in so doing.

**2. Collision** ⊂⇒95(2)—Tug on wrong side of narrow channel, and signaling starboard to starboard passing held at fault in resulting collision (Comp. St. § 7892, art. 18, rule 1).

Tug on wrong side of narrow channel, and signaling for starboard to starboard passing, though the two vessels were end on, or nearly so, *held* to have violated Comp. St. § 7892, art. 18, rule 1, and at fault in resulting collision.

**3. Collision** ⊂⇒95(4).

Steamer, assenting to ill-judged proposal of tug for starboard passing in narrow channel, *held* not at fault in resulting collision.

Manton, Circuit Judge, dissenting in part.

Appeal from the District Court of the United States for the Southern District of New York.

Libel by the Lehigh Coal & Navigation Company, owner of the barge Greenwood, against the steamship La France, the Compagnie Générale Transatlantique, claimant, and the steam tug Nathaniel P. Doane, the Doane Towboat Company, impleaded claimant. From a decree for libelant against the Doane Towboat Company alone, libelant and the Towboat Company both appeal. Affirmed.

An outline of the collision from which grew this suit is that, on a winter day and during a steady northwest gale of 60 miles an hour and over, La France started for sea, drawing 33 feet and being 750 feet long. She entered the channel off the Staten Island anchorage, and proceeded near the western edge thereof. The tug Doane, with libelant's barge Greenwood on her port side, laden with coal and drawing 17 feet, rounded Robbins Reef buoy on her way to the East River and beyond, and approached La France "end on or nearly so."

There followed an exchange of two whis-

12 F.(2d)—22

tles between tug and steamer; the former went to her own port enough to throw herself and tow at an angle of about 45 degrees across the steamer's path, while the latter also starboarded, but changed course only about a point. Her slow speed and possibly the fact that she was slightly down by the head made her answer the helm slowly. Deeming collision inevitable, Doane cast off her lines and backed clear, before La France struck the barge on the starboard side somewhat abaft the beam, causing her to sink in a few minutes.

The barge owner sued La France, which impleaded the Doane. The court below exonerated the former vessel, and held the tug solely responsible. Both libelant and tug owner appealed.

Bigham, Englar & Jones, of New York City (T. Catesby Jones, of New York City, of counsel), for libelant.

Stephen A. D. Jones, of New York City, for the Doane.

Joseph P. Nolan, Blodgett, Jones, Burnham & Bingham, and Macklin, Brown & Van Wyck, all of New York City, for La France.

Before HOUGH, MANTON, and HAND, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The facts, as found by Ward, Circuit Judge, in the court below, we fully accept, and shall not go over them further. Accordingly we shall assume that Doane first blew the two-whistle signal, proposing in what is technically a "narrow channel" to pass starboard to starboard a vessel approaching end on or nearly so. Furthermore, the reason why Doane wished to get to the port side of the channel was that her tow was so heavy that she had more difficulty in stemming the ebb tide then running, when keeping to the eastward or her own starboard side, than she hoped to encounter on the other side close by the anchorage grounds. Her witnesses assert a custom for tows so embarrassed to do what she wanted to do.

[1] The narrow channel rule (article 25 [Comp. St. § 7899]) requires traveling on the starboard side of the fairway "when it is safe and practicable," and it is not pretended that compliance with the rule is unsafe, or that it is impracticable in any other sense than that it is difficult and may be impossible to comply therewith, if the tug is weak enough and the tow heavy enough. In other words, the custom asserts a right to do

that which a tug finds most suitable for its strength. We do not think the custom proved; but, if it were, it would be bad in law, because compliance therewith would violate positive statutory enactment. The Alfred W. Booth (D. C.) 127 F. 453, affirmed 138 F. 303, 70 C. C. A. 593; Cudahy v. Narzisenfeld (C. C. A.) 3 F.(2d) 567. The rules of navigation presuppose fitness to navigate.

[2] The Doane was on the wrong side of the channel when she blew the signal of two whistles, and her presence there was in our judgment a cause rather than a condition of collision; but she was very plainly at fault for violating article 18 (rule 1) [Comp. St. § 7892], in that she proposed a starboard passing when the courses of the two vessels were not "so far on the starboard of each other as not to be considered as meeting head and head," and made the proposal at a time when, as the event proved, it was impossible safely to carry it out. This appeal was, we think, intended primarily to test again the asserted liability of La France. The argument substantially is that the steamer did not soon enough reverse, and did not refuse assent to the maneuver proposed by the tug. It is true that precipitate assent to an ill-judged two-whistle proposal has of itself been held a fault; but the matter is always one of evidence and circumstances, and the question which must be answered is this: Did the assenting vessel do wrong in the predicament produced by the first signal?

[3] In this instance the duty of decision lay upon the pilot, who, however, did nothing not approved by the captain, who was also on the bridge. We accept the story as told by the pilot, viz.: He at once recognized the situation as one of danger; he had instantly to decide whether to stop the ship or "try to twist her"; he decided on the latter course, and so put the helm hard over and went full astern on the port engine and full ahead on the other—the steamer having twin screws.

The Doane had changed course to the westward and into the gale then blowing instantly on giving the two whistles; it was as a matter of judgment a better chance "to twist her," for, if the France merely reversed full and blew danger whistles, the tug and tow would probably be caught before they could cross the steamer's bow.

This is the substance of the pilot's story, and we are (1) of opinion that he manifested at the very least the ordinary care and skill of his calling; and (2) that the event proved by the angle of collision that the France nearly "twisted" enough, and that the maneuver actually attempted probably enabled the Doane at least to escape the disaster she had herself invited.

For these reasons, the decree below is affirmed, with costs.

MANTON, Circuit Judge (dissenting in part). I dissent from that part of the decision, about to be announced, which exonerates the La France. The District Court found that the two vessels were quite close together when the passing was agreed upon. The La France consented to the passage undertaken by the exchange of two whistles. Those in charge of the La France concede that she was down by the head and that it was difficult to steer her. They knew the wind was blowing strongly from the northwest when they consented to the passage, and that the Doane was having difficulty in bucking the wind. Under the circumstances, they say the La France changed her course "not more than a point." It would not have been difficult for the La France to have gone to the eastward. She might also have stopped or reversed; either would have avoided the collision.

I think she was at fault and should be held for damages. The Doane was properly held.