**SOUTHERN PAC. CO. v. UNITED STATES.**

## THE EL ALBA.

Nos. 8835, 9069.

District Court, E. D. New York.

April 29, 1929.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and John K. Hartley, both of New York City, of counsel), for Southern Pac. Co. and the El Alba.

William A. DeGroot, U. S. Atty., of Brooklyn, N. Y. (Horace M. Gray, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

CAMPBELL, District Judge.

The two above-entitled suits arose out of a collision between the steamship El Alba and the United States government dredge Raritan, and, as the facts are the same in both, one opinion will suffice.

There is considerable conflict in the testimony on some points, but I have given great weight to the testimony of the disinterested witnesses Litchfield, Richcreek, Nelson, Moran, and Fink, and find as follows:

On the afternoon of January 28, 1925, the steamship El Alba, 391 feet long, 48 feet beam, loaded with cargo, left pier No. 48, North River, Manhattan, bound for New Orleans.

It was a clear day, but smoky, tide ebb, wind north.

The El Alba proceeded down the North River, stopping and going astern to allow a ferryboat to cross her bow.

When the El Alba was about on a line with Castle William, on the north end of Governors Island, and on the New Jersey side of the fairway bound down the channel, headed for Owl's Head buoy, she observed on her port bow the Raritan, a large hopper steam dredge, 290 feet long and 47 feet beam, a little east of the fairway, bound up the channel and angling somewhat to the New Jersey shore.

█ The Raritan and the El Alba were practically end on, and the situation was a meeting one, requiring under the Inland Rules a port to port passage. The Amolco (C. C. A.) 283 F. 890; The Sabine Sun (D. C.) 21 F.(2d) 121; The Bilbster (C. C. A.) 6 F.(2d) 954; The La Bretagne (C. C. A.) 179 F. 286; The Victory & The Plymothian, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519.

Those on the Raritan say she gave a two-blast signal when she first observed the El Alba, which, not being immediately answered, she, after a short interval, repeated, and, with the vessels in the positions stated, the El Alba answered with a two-blast signal.

█ Whether the Raritan blew one or two of the two-blast signals is of small moment, because, until her two-whistle signal was answered by the El Alba with a two-whistle signal, it was the duty of the Raritan to pass the El Alba port to port, and the El Alba heard only one such signal, and that was the one she answered.

The Raritan was bound for her dredging buoy below Ellis Island on the New Jersey side of the channel, and it was solely to save time and more easily make her buoy that she desired the starboard to starboard passage rather than the port to port passage.

█ The Raritan had twin screws, but was very clumsy, very hard to steer, took long to come, answered slow, and was a contrary old thing, according to her pilot and master.

These facts were known to the Raritan, and when by her two-whistle signal she indicated a starboard to starboard passage, she should have considered whether she had the ability to do her part in carrying out the maneuver. The Charles R. McCormick (D. C.) 15 F.(2d) 386; The Prometheus (D. C.) 14 F.(2d) 686; Lehigh Coal & Navigation Co. v. Compagnie Generale Transatlantique (C. C. A.) 12 F.(2d) 337.

█ The clumsiness of the Raritan was known to her own officers, but was not known to the officers of the El Alba, and the El Alba was not at fault in assenting to the Raritan's two-blast signal and attempting to carry out the proposal. Lehigh Coal & Navigation Co. v. Compagnie Generale Transatlantique, supra; The George L. Garlick (D. C.) 91 F. 920; The William H. Payne (D. C.) 20 F. 650; The Admiral (D. C.) 39 F. 574; The Lexington (C. C. A.) 275 F. 279; The Charles R. McCormick, supra.

█ On the assent by the El Alba to the Raritan's two-blast whistle signal, it was the duty of both vessels to co-operate in carrying out the proposed passage.

█ Even if it was a crossing situation, the Raritan was at fault for attempting to cross the El Alba's bow, because the Raritan was off the port bow of the El Alba, and the El Alba was off the starboard bow of the Raritan, and the starboard hand rule applied; the El Alba being the privileged vessel and the Raritan the burdened vessel. Articles 19 and 22 of the Inland Rules (33 USCA §§ 204, 207).

The only reason for the maneuver was the desire of the pilot of the Raritan to save time in getting to his work, to do which he was willing to take a chance.

█ Notwithstanding the fact that the El Alba, the privileged vessel, assented to the two-blast signal of the Raritan, the burdened vessel, the Raritan should have kept out of the way. The Lexington, supra; The Newburgh (C. C. A.) 273 F. 436; The Nereus (D. C.) 23 F. 448; The Greenpoint (D. C.) 31 F. 231; The Thielbek (C. C. A.) 241 F. 209.

█ The El Alba, on blowing the two-whistle signal, put her helm to starboard, and then hard astarboard, and was swinging to port, doing her best to carry out the maneuver, but, whatever may have been the movements of the Raritan's wheel, she did not swing to port, but to all appearances continued on the course and at the speed she had been on when she gave the two-whistle signal, and this was a fault on the part of the Raritan. The Erin

(C. C. A.) 194 F. 405; Tuttle v. Director General of Railroads (D. C.) 281 F. 212, affirmed without opinion (C. C. A.) 281 F. 214; The Luther C. Ward (D. C.) 149 F. 787.

■ It being apparent to the El Alba, which was not making excessive speed, that, if she carried on, a collision was bound to occur, she put her engines full speed astern as soon as the fact was discovered, and gave the backing or danger signal about two minutes before the collision, and continued blowing signals. The Raritan put her engines full speed astern just before the collision, and, even if the El Alba committed an error in assenting to the Raritan's two-blast signal, or in continuing on instead of putting her engines full speed astern immediately, it was an error in extremis. The Maggie J. Smith, 123 U. S. 349, 8 S. Ct. 159, 31 L. Ed. 175; The Chalmette (D. C.) 93 F. 500; The Thingvalla (C. C. A.) 48 F. 764; The Queen Elizabeth (C. C. A.) 122 F. 406, 409.

The testimony of the pilot of the Raritan that he reversed her engine when he blew the second two-blast signal is clearly erroneous.

Whether the El Alba gave a backing or danger signal is not of moment, as it did not affect the result.

■ There is no force to the claim that the El Alba was at fault for lack of a sharp lookout or the failure of Capt. Burns to judge the course of the Raritan.

The El Alba, whose master and first officer were on the flying bridge, and the third officer and quartermaster were in the pilothouse below, observed the Raritan at all times after the two-whistle signal was blown by her, and the absence of a lookout at the bow did not and could not have contributed to the collision, The Washington (C. C. A.) 241 F. 952, The George W. Elder (C. C. A.) 249 F. 956, and it was not the failure of Capt. Burns to judge the course of the Raritan which caused the collision, but the fault of the Raritan to co-operate as she should have done in carrying out the maneuver, which failure could not be anticipated by Capt. Burns; but, in any event, the faults of the Raritan were so glaring, and sufficient to account for the collision, that this court should not be astute to discover some contributory fault on the part of the El Alba. The City of New York (Alexandre v. Machan), 147 U. S. 72, 13 S. Ct. 211, 37 L. Ed. 84, 85; The Ashbourne (C. C. A.) 181 F. 815; The Persian (C. C. A.) 224 F. 441; The Lexington, supra.

The vessels came together almost head on, the port bow of the Raritan striking the port bow of the El Alba, inflicting damage to both vessels, near mid-channel on the Governors Island side.

A decree may be entered in the first above-entitled suit in favor of the Southern Pacific Company, libelant, with costs and the usual order of reference.

A decree may be entered in the second above-entitled suit, in favor of the Southern Pacific Company, claimant, dismissing the libel, with costs.