## THE GEORGE L. GARLICK.

## THE WHITE FAWN.

*(District Court, S. D. New York. February 12, 1884.*

**1. COLLISION—ANSWERING SIGNALS.**

A steam-tug, at rest in the stream preparing to land her tow, and in a place in the stream where she leaves room for other vessels to pass, being required by rule to answer signals from other vessels, is not required, in consequence of answering with two whistles a signal of two whistles given to her by another tug, to suspend the business in which she is engaged, and pull away to the left. Such response is only a signal of acquiescence with the other tug's signal, and an agreement that she will do nothing to embarrass the latter's passing to the left.

2. SAME—ACTS IN EXTREMIS.

Where a steam-tug put herself in the way between her tow and a schooner which was about to strike the tow, so as to fend off the schooner from the latter, and damage thereby resulted to the schooner, *held* justified as an act *in extremis*, to prevent a more injurious collision, for which the tug was not responsible.

In Admiralty.

*Beebe & Wilcox,* for libelant.

*Owen & Gray,* for the Garlick.

*Goodrich, Deady & Platt,* for the White Fawn.

BROWN, J. On the twelfth of May, 1881, the libelant's schooner Telegraph, in tow of the steam-tug White Fawn, upon a hawser of about 20 fathoms, came into collision near the middle of the East river, off about Fourteenth street, with the steam-tug George L. Garlick. The tide was flood, and the day clear. The White Fawn, with her tow, was proceeding nearly in the center of the river. The Garlick had previously been taking a bark of about 1,000 tons, not loaded, in tow, upon a hawser of about 50 fathoms, from Gowanus creek, bound for North Tenth street, Brooklyn. The Garlick, with her tow, had turned around, so as to be heading down river against the tide, and had slackened her hawser preparatory to taking it in, and going along-side the bark for the purpose of landing her, when a signal of two whistles was received from the White Fawn, then from an eighth to a quarter of a mile further down the river, to which the Garlick immediately replied with two whistles. The men who were at the time engaged in taking in the slack hawser of the Garlick, continued to do so until she was near the bows of the bark. At that time the White Fawn had crossed the bows of the Garlick to the westward, but the schooner in tow was not able to cross without a collision, and, in order to avoid a more injurious collision with the bark, the pilot of the Garlick started ahead to fend the schooner off from the bark, and thereby struck the starboard bow of the schooner with the port bow of the tug a considerable blow, from which some damage arose, to recover which this libel was filed against both tugs.

The evidence leaves no question in my mind that it was the duty of the White Fawn to keep out of the way of the Garlick and her tow. This duty rested upon her equally, whether the situation were regarded in reference to the heading of the two tugs, or in reference to their actual motion. In the former view it was the fifth situation, and the Garlick was on the starboard hand of the White Fawn. In reality, however, the Garlick, though headed down river, was taking in her hawser preparatory to going along-side of the bark in order to land her, and that was perceived and understood on the White Fawn; and while doing so, the Garlick, though headed down river, was drifting up river with the flood tide. Before turning around she had been going in the same direction as the White Fawn, and ahead of her. The White Fawn was the overtaking vessel, and might be so considered, after the Garlick had headed round, as before stated. The Gar-

lick first began to head round towards the Brooklyn shore, but she afterwards changed, and swung round to the westward. There was plenty of room for the White Fawn to have passed to the eastward of the Garlick, and nothing in the way of her doing so. Her pilot saw what the Garlick was doing, and understood it, and after the latter had headed round, and when the White Fawn's first signal of two whistles was given, there was still plenty of time and space for the White Fawn to have avoided her.

I do not discover in the evidence any legal fault on the part of the Garlick. At the time of the collision, and for some considerable time previous, she had been floating with the tide. After heading round against the tide she was taking in her hawser, preparing to go alongside the bark for the purpose of landing. This it was proper for her to do in the open river, where she occasioned no obstruction to other vessels; she was not navigating at the time, but drifting; and this was obvious to the pilot of the White Fawn. It is urged that her answer to the whistles given by the White Fawn obligated her to go to port under a starboard helm. I do not perceive the ground of any such obligation. She was required to answer the White Fawn's two whistles, and she did so. She was also bound "to keep her course," and her course was then simply drifting. All that her answer meant was that she assented to the White Fawn's passing to the left, and that she would do nothing to embarrass the White Fawn or her tow in passing on that side. The evidence shows that she did not do anything to embarrass her. The answer did not require her to tighten her hawser and pull off to the eastward, instead of remaining still and drifting as she was doing. The responsibility of undertaking to pass to the left rested wholly upon the White Fawn; and so long as the Garlick was not going ahead, and was in no way embarrassing the movements of the White Fawn or her tow, the fault in not keeping out of the way rested upon the latter.

The movement of the Garlick at the last moment, to prevent a more injurious collision between the schooner and the bark, was an act *in extremis*, rendered necessary by the previous fault of the White Fawn. I am satisfied that it did not increase the inevitable damage of the impending collision, and it is therefore no fault and no ground of damage against the Garlick.

The libel should therefore be dismissed as against the Garlick, with costs, and a decree entered against the White Fawn, with costs, with a reference to compute the amount of the damage.