### THE AMERICAN.

### THE LIZZIE CRAWFORD.

#### (District Court, E. D. Pennsylvania. February 13, 1912.)

#### No. 11.

COLLISION (§ 95*)—TOWS MEETING—MUTUAL FAULTS.

Two meeting tugs, each with a tow alongside, both *held* in fault for a collision in Delaware river about dusk, where, although each was to the starboard of the other when only 700 feet apart, one gave and the other assented to a signal to pass port to port, and in attempting to execute such dangerous maneuver the collision occurred.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 200–202; Dec. Dig. § 95.*

With or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

In Admiralty. Suit for collision against the tug American, in which the tug Lizzie Crawford was also joined. Decree against both tugs.

John Hampton Barnes, for libelant.
Henry R. Edmunds, for respondent.

. J. B. McPHERSON, District Judge. On November 10, 1910, the tug Lizzie Crawford, under charter to the Pennsylvania Railroad Company, was towing a car float from Greenwich up the Delaware river, bound for the Atlas pier on the New Jersey side. The float—205 feet long and 35 feet wide—was lashed to the tug's port side, and projected beyond its bow. How far does not appear; but, as the tug was not large and was lashed aft of the float's amidships, the projection was probably considerable. The tug American, which is also small, was coming down the river from Vine street towing a loaded mud scow (whose dimensions were not proved) that was lashed upon her port side and projected beyond the bow about 75 feet. The tide was flood, the wind light from the southwest, and the hour about 5:30 in the afternoon. It was dusk, but not dark, and there was no difficulty in seeing objects at least as far as any distance referred to by the witnesses. Proper lights were in place and burning upon both tugs, and the float was also lighted, although the scow was not. But neither lights nor lookouts play the most important part in this inquiry and they need not be dwelt upon.

In my opinion both vessels were at fault. The testimony is in direct conflict, and it has been necessary to decide which account is more probable. The decision has been influenced to some extent by the conviction that the American's principal defense is unfounded. She avers that her attention was first engaged by another tug that was nearer to her than the Crawford, and that while she was trying to avoid this

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

immediate danger the Crawford approached without sufficient warning and improperly attempted to cross her bow. I am satisfied that this averment is not correct. No other tug was in the neighborhood, and the American's testimony is in some degree discredited. What happened, I think, was this: The Crawford had nearly reached the pier for which she was bound, and was preparing to round to starboard in order to make the mooring. At this point, over an interval of about 700 feet, each tug was aware of the other's presence. Each was showing its green light to the other, and it seems clear that in such a position and at such a distance there was danger in attempting to pass port to port. The proper maneuver would have been to keep their respective courses and pass starboard to starboard, and this could have been done in safety. But the Crawford was apparently unwilling to make the detour that would be necessary if she should pass starboard to starboard before rounding toward the pier, and signaled with one blast. This was an error, and the American was not bound to accept the proposal, especially as she could only move very slowly against the flood tide. But she made a similar error by agreeing to the signal and answering with one blast. Thereupon both vessels ported, and the attempt, dangerous as it was, nearly succeeded. As they approached, however, it became highly probable that they would come together. Danger signals were blown, and the American reversed; but the collision could not be wholly avoided, the float and the scow collided, the port corner of the latter's bow striking the port side of the float about 10 feet from the stern, and the damage complained of was done.

The Crawford's fault was in giving the wrong signal, offering to pass on the wrong side, and in attempting to carry out a dangerous maneuver. The American was at fault in accepting an obviously improper proposal, and in taking part in the effort to carry it out. The damages and costs should be divided, and a decree to that effect may be entered.