**THE LEHIGH VALLEY NO. 142. THE D. F. McALLISTER. THE SENECA. THE N. Y. B. NO. 1.**

Circuit Court of Appeals, Second Circuit.
July 22, 1929.

Nos. 281, 282.

708

Foley & Martin, of New York City (J. A. Martin and Edward E. Elder, both of New York City, of counsel), for appellant.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for appellee Augustus Mackenzie, Jr.

William F. Purdy, of New York City, for other appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge (after stating the facts as above). The foregoing facts are established without substantial dispute, but there is a sharp conflict in the testimony as to just where the first collision occurred and what caused it. The Seneca's story is that she was close to the outer corner of Pier 33, with her tow straight behind her, when she blew her one-blast signal to the McAllister, which was then 200 to 250 feet out in the river and headed down stream, the forward end of the car float, made fast on her starboard side, being about opposite the end of Pier 38; that thereafter the forward end of the car float swung to port through so large an arc as to cause it to angle toward Pier 33, and to strike the lighter amidships when it was directly off the end of Pier 33 and within 30 feet of it. The McAllister, on the other hand, says that when the signals were exchanged she was angling in toward the gap, the forward end of her car float being close to the outer corner of Pier 38 and the Seneca being then not far off the end of Pier 37; that the collision occurred near the inner corner of Pier 38 and was due to a sheer of the lighter to port (her starboard, as she was being towed stern first), caused by the Seneca's attempt to "snake" the lighter past the McAllister's tow and "beat him to the gap."

The District Judge found, and we agree with him, that the probabilities favor the story of the McAllister, and that the collision must have occurred closer to Pier 38 than to Pier 33. With the tide flood, it was necessary for the McAllister to hold the forward end of her tow close to the end of Pier 38, around which she had to pivot, in order to make the float bridge. Had it gotten so far out of control as to point toward Pier 33, and had the collision occurred at the place asserted by the Seneca, neither the car float nor the lighter would have gotten into the positions they did after the collision.

The fault of the Seneca is clear. It was risky navigation to attempt to pass out of the gap while the McAllister and her tow were entering. The car float was 275 feet in length and would practically close the gap, leaving, as the master of the McAllister admits, only about 60 feet clearance between the rear end of the car float and Pier 33. The Seneca was heading into the wind and would easily have held back until the car float had cleared the gap. She should have done so. The Galatea, 92 U. S. 439, 23 L. Ed. 727. Having adopted the dangerous alternative of proceeding, she at least is responsible for her failure to execute the maneuver successfully.

We think the McAllister also at fault for consenting to the maneuver proposed by the Seneca's one blast signal. As was recognized by this court in Lehigh C. & N. Co. v. Compagnie Générale, 12 F.(2d) 337, an assent to an ill-judged signal may or may not be a fault, depending upon the circumstances. The McAllister's master says that when the signals were exchanged he thought the Seneca would hold her position and pass under his stern after he had cleared the gap. He admitted, however, that there was no need for the Seneca to signal, if she was going to hold back. He also says he thought there was room for her to pass, although he himself would not have undertaken to do so, had he been navigating her. If he was in doubt as to the Seneca's intention, the rule required him to blow an alarm. If, on the other hand, he thought the Seneca meant to pass in the gap, he should have appreciated the danger. He could know, even better than the Seneca's master, how rapidly the wind was blowing the McAllister in, and how close the rear of his float would come to Pier 33. He was not stationary, as was the assenting vessel in The William H. Payne, 20 F. 650 (D. C. S. D. N. Y.), and the George L. Garlick, 20 F. 647 (D. C. S. D. N. Y.), where the assent was not held a fault. Here the McAllister was steadily moving in, each moment making a passage in

the gap more hazardous. A danger signal might well have induced the Seneca to hold back, as she so readily could have done. Under these circumstances both vessels engaged in the dangerous maneuver and should share the risk. See The American, 194 F. 899 (D. C. E. D. Pa.); The Pembrokeshire, 269 F. 851, 852 (D. C. Md.); The Albemarle, Fed. Cas. No. 135.

The decrees are modified, so as to hold the Seneca and the McAllister equally responsible for both collisions.