## THE BILBSTER.

## THE STAVANGAREN.

(Circuit Court of Appeals, Second Circuit. April 6, 1925.)

No. 269.

1. **Collision ⊕═91—Steamer failing to pass port to port held at fault for collision.**

Where directions of steamers called for a port to port passage, steamer, in failing so to pass, in not keeping proper lookout, and in shearing from westerly to easterly side without answering first steamer's one-whistle signal, *held* chargeable with fault of collision.

2. **Collision ⊕═91—Steamer held to have done all that could be expected of her to avoid collision.**

Where steamers were heading directly for each other, steamer which blew one whistle, ported her helm, reversed her engines when the other swung to port, gave a second signal of one whistle, and then blew three whistles, *held* to have done all that could be expected of her in efficient endeavor to avoid collision.

3. **Collision ⊕═98—Vessel cannot assume another vessel will pass starboard to starboard until two whistles are blown and answered.**

Port to port passing is a normal and proper navigation; one vessel not being entitled to assume that another vessel will pass her starboard to starboard until two whistles are blown and answered.

Appeal from the District Court of the United States for the Southern District of New York.

Separate libels for collision by the Dampskibs Akties Stavangaren against the British Steamship Bilbster, her engines, etc., Canada Steamship Lines, Limited, claimant, and by the Canada Steamship Lines, Limited, against the Norwegian Steamship Stavangaren, her engines, etc., Dampskibs Akties Stavangaren, claimant. From a decree holding both vessels at fault, and for a division of damages, both libelants appeal. Decrees modified.

Haight, Smith, Griffin & Deming, of New York City (John W. Griffin, of New York City, of counsel), for The Stavangaren.

Barry Wainwright, Thacher & Symmers, of New York City (Earle Farwell, of New York City, of counsel), for the Bilbster.

Before HOUGH, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. At about 10 a. m. December 27, 1920, below Owl's Head buoy, in the channel leading to the Narrows in New York Bay, the Stavangaren and Bilbster collided, and libels were filed by each seeking damages resulting from such collision. The weather was hazy, but vessels could see at a distance of a mile or more. The tide was flood, though not running at full strength. The Bilbster was outward bound, and the Stavangaren was bound up the channel. Owl's Head buoy is on the easterly side of the channel, and marks the turn into the upper bay. The Stavangaren intended to round the Owl's Head buoy. The Bilbster passed Robin's Reef buoy and turned to port in order to take a south by east course, which would carry her diagonally across the channel to the eastward side. For this purpose she put her helm to starboard and her engines to full speed, and this in order to make the swing quickly. It resulted in a shear which put her out of control and caused her to swing to port and out to the eastward, so that the vessels came together. The Stavangaren ported her helm and reversed her engines. It is the claim of the Bilbster that the Stavangaren was on the westerly side of the channel, and the court below so found. It is a further claim that, when the vessels sighted each other, each was on the other's starboard bow. Liability was placed upon the Stavangaren for being on the left side of the channel, and the Bilbster for making the shear and for inattention to the Stavangaren's signals. With the Stavangaren on the westerly side of the channel and the Bilbster on her starboard bow, if the Stavangaren was also on the Bilbster's starboard bow, the Bilbster's course would be east of the Stavangaren. The Bilbster took the shear still further to the eastward, and we are unable to understand how the Stavangaren could have moved to the eastward so rapidly that she overtook the shearing Bilbster and threw herself across her bow, and was struck on the flat of her port side forward of amidship by the bluff of the Bilbster's port bow at an angle of 45 degrees. This conclusion as to the happening of the collision seems improbable, and, indeed, is contrary to the credible evidence which was adduced at the trial. It points out the improbability of the Stavangaren being on the west side of the channel, and that the vessels were approaching starboard to starboard. The story told by the master and quartermaster of the Bilbster would seem to make it impossible that she could have been on the Stavangaren's starboard bow unless the Stavangaren was far over on the anchorage ground, to which no claim is made.

The Stavangaren, a smaller vessel than the Bilbster, after spending the night at quarantine, started about 9 a. m. in charge of the Sandy Hook pilot bound for Brooklyn. She had been tailing up the river on the tide, and in order to head up to the city she made a wide swing to port under a starboard helm. She navigated on the starboard or right side of the channel—about two-thirds of the way over to the starboard. She was running north by east, magnetic course, which is the channel course north bound. As she was bound for Brooklyn, her next point of departure was the Owl's Head buoy. Her crew saw the buoy before the collision. The pilot of the Stavangaren said he was shaping his course so as to pass it 700 or 800 feet away. The log states the buoy was one-quarter of a mile in a northeast direction. It is satisfactorily established that she was complying with the rule by keeping on the easterly or right side. As she was then proceeding, she sighted the Bilbster on her port bow about one-half point and headed directly for her. The Bilbster, having rounded the bend, had swung to the point where she was heading exactly for the Stavangaren. These were the positions we find the vessels to have been in when they sighted each other. Under these circumstances, a one-whistle passing signal was required by the rules. The Stavangaren blew a signal of one whistle. There is some dispute as to whether this was in point of fact heard by the Bilbster. Some of her witnesses said that they heard two signals. We are satisfied that a one-whistle signal was given. The Bilbster gave no answer, and, after waiting 15 seconds, the Stavangaren blew a second time. The pilot of the Bilbster said one whistle was blown, which would indicate the vessels were approaching port to port. If the vessels were approaching starboard to starboard, a two-whistle signal would be expected. The pilot of the Bilbster said he did not see the Stavangaren until he heard her whistle, which of itself indicates lack of vigilance under the weather conditions. It does appear that the

Bilbster, instead of answering the one whistle for a port to port passage, as she would be expected to do, continued to swing to her own port. This was observed by the Stavangaren. It may be that, as the Bilbster swung to the point where the tide was striking her starboard bow, the flood current would tend to increase her swing and make it still harder to break the shear, but the Bilbster's swing to port is clear. We are also satisfied that the Stavangaren ported her helm when she blew the one whistle as required. She did this even before it was apparent that the Bilbster was going to continue her swing to port. The Bilbster did not co-operate in a port to port passage, and then the Stavangaren reversed her engines, still keeping her helm to port. After such navigation for about 10 seconds, a second signal of one was given, and the Stavangaren blew three whistles. The Bilbster then also reversed her engines and blew three, but she had considerable headway, and the vessels struck. There is no dispute as to the angle of the collision. The contact was not on the bluff of the Stavangaren's bow, but on the flat of her port side. The collision was due to the Bilbster's headway, since the Stavangaren was navigating bow first and not sideways.

[1] If the Bilbster had been stationary, the collision probably would not have occurred unless the Stavangaren moved toward her sideways, which would seem impossible, this because the Stavangaren was swinging to the starboard of the Bilbster. It is not a sufficient reason to say that the flood tide carried the Stavangaren into her. When the vessels were navigating with reference to each other in the current, their motion must be judged with reference to the water. If the Bilbster had lost her headway and had been moving with the current just as much as the Stavangaren was, the collision would not have occurred. The place of collision, we think, was as stated above, and the positions of the vessels afterward does not change our conclusion in this respect. The collision was in a general way down stream from the buoy about 300 to 500 feet westerly. We conclude that the Stavangaren was proceeding on the starboard side of the channal and the Bilbster was on her port heading directly toward her. This called for a port to port passage, and the Stavangaren

signaled accordingly. But the Bilbster kept swinging to the eastward, taking a course that ran her into the collision.

The Bilbster was at fault for not keeping a proper lookout. Her attention was centered on changing her course when she passed the Robin's Reef Bell buoy. She was trying to change quickly and sharply, as is shown by the fact that her engines were ordered full speed ahead to increase the swing. During this time, she was not paying attention ahead of her. Her pilot, on his own statement, did not see the Stavangaren until her swing had progresed so far that the Stavangaren was some two points on the Bilbster's starboard bow and until after the Stavangaren had blown her first, if not her second, signal. We think neither the master nor the pilot of the Bilbster heard the Stavangaren's first signal at all. Her prime fault, however, was in failing to pass port to port and in shearing from the westerly to the easterly side. This directly brought about the collision, and indeed made it impossible for the Stavangaren to get away.

[2, 3] In determining faults, it is well to start about learning the obligations of the vessels at a time when they first saw or sighted one another. Then the obligations of the vessels with respect to passing was fixed. It was obviously a one-signal situation, and, if the Bilbster had been under control, there would have been no difficulty in carrying out the maneuver. The Stavangaren thought properly that the Bilbster would perform her obligations and pass port to port. She accordingly blew one whistle, and her signals indicated this. She did all that could be expected of her in an efficient endeavor to avoid collision. Port to port passing is a normal and proper navigation. A vessel is not entitled to assume that another vessel will pass her starboard to starboard until two whistles are blown and answered. The Victory, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519; The Johnson, 76 U. S. (9 Wall.) 146, 19 L. Ed. 610; The Gerry (D. C.) 161 F. 413; The Wm. P. Palmer, 261 F. 925; The Florence, 186 F. 57, 108 C. C. A. 159.

It was error to oblige the Stavangaren to respond in part for the damages which followed from the collision, and the decrees will be modified so as to render the Bilbster solely liable.

Decrees modified accordingly.