## THE SABINE SUN.

## THE LADY BRENDA.

District Court, E. D. Pennsylvania. July 14, 1927.

No. 41.

1. **Collision** ⚖☞105(2)—**Evidence held to show primary cause of collision was failure of one vessel to maintain speed.**

Evidence *held* to show that collision of steam vessels was primarily due to failure of one of them to maintain speed, and action in starting full speed ahead without waiting for answering signal.

2. **Collision** ⚖☞91—**Port to port passing on signal and answer is proper, where vessels coming from opposite directions are meeting head on in channel of sufficient width for clearance (pilot rule 4).**

Under pilot rule 4, where two vessels, coming from opposite directions, are meeting head on in channel of sufficient width to give clearance without risk of grounding, the port to port method of passing is the normal and proper method of navigation, and one vessel is not entitled to assume that another will pass her starboard to starboard until two whistles have not only been blown, but answered.

3. **Collision** ⚖☞91—**Vessels approaching from opposite directions 1½ to 2 points are considered as head and head, and bound to pass port to port.**

If two vessels are approaching from opposite directions, as much as 1½ to 2 points, they are to be considered as head and head, and bound to pass port to port.

4. **Collision** ⚖☞91—**Navigator, having determined passing was practicable, was under duty to stop, reverse, and stand still, when it became apparent other vessel disregarded signals (pilot rule 7).**

Navigator of vessel, having determined that port to port passing was practicable, *held* re-

quired by pilot rule 7 to stop, reverse, and come to standstill, when it became apparent other vessel had disregarded signals.

**5. Collision ⊕═91—Jamming of steering gear of vessel undertaking proper method of passing held not proximate cause of collision.**

Jamming of steering gear of vessel which had undertaken normal and proper method in navigating of passing port to port *held* not proximate cause of collision, even though, had the gear not been jammed, the collision might have been avoided.

In Admiralty. Libel by one Young, master of the steamship Lady Brenda, against the steamship Sabine Sun and the Sun Oil Company, in which the Sun Oil Company, as owner of the Sabine Sun, filed a cross-libel against the Lady Brenda. Decree for cross-libelant.

Biddle, Paul, Dawson & Yocum, of Philadelphia, Pa., for libelant.

Lewis, Adler & Laws, of Philadelphia, Pa., for respondent.

THOMPSON, District Judge. This case was heard upon libel and answer and cross-libel, and arose out of a collision in the Delaware river on March 27, 1925, between the steamship Lady Brenda, owned by the Dawson Line, Limited, a British corporation, and under charter to the Munson Steamship Line, and the Sabine Sun, owned by the Sun Oil Company. Lady Brenda was bound from a port in Cuba with a cargo of centrifugal sugar on a voyage to Philadelphia. She is a British-built steel screw steamship of 3,167 gross tons, about 325 feet long, 48 feet beam, and 22.2 feet deep. The Sabine Sun is an American-built steel screw tank steamship of 6,728 gross tons, 429 feet long, 59 feet beam, 31.4 feet deep.

At the time of the collision, the Sabine Sun was bound light from Philadelphia to Sabine Pass, Tex. The collision occurred at a point approximately a mile above Fourteen-Foot Bank light, shortly after 6 p. m. During the late afternoon there had been intermittent fog upon the river, but it had cleared somewhat, and the lookout upon each vessel had observed the other vessel when from three-quarters of a mile to a mile apart. There is considerable discrepancy in the testimony as to some of the facts in the case, but the pertinent facts are not difficult of determination. The Lady Brenda had taken on a pilot at a point somewhere between Overfalls Light vessel and Cape Henlopen. After taking on the pilot and while passing Brown Shoal buoy No. 7, according to the navigating officers of the Lady Brenda, her course was set at north by west, magnetic,

which was held without change until just before the collision. According to her pilot, the course set while passing buoy No. 7 was north by west one-half west, magnetic, which was kept until buoy No. 10, south of Fourteen-Foot Bank light, was passed 1,000 feet on the starboard side, and then changed to north by west, and she was on that course when the Sabine Sun was sighted. There was a strong ebb tide and, because of the fog, the Lady Brenda was proceeding slowly at about two knots over the ground.

The Sabine Sun was taking the usual course for outgoing steamships down the river, when the Lady Brenda was sighted; her course being about south by east one-half east. When the Sabine Sun was seen by those on the Lady Brenda, she was on the Lady Brenda's port bow and showing her starboard side. The Lady Brenda was well over on the west side of the channel, as shown by her course marked on the chart in evidence, while the Sabine Sun was in about the same position further upstream.

In this situation, if the pilot rules had been observed, the facts incident to the collision show that they could have passed each other in safety. It was testified to by all the witnesses examined on that point that, under the orders of the pilot on the Lady Brenda, she gave two short blasts of her whistle to indicate her intention of passing starboard to starboard. The witnesses on behalf of the Sabine Sun are equally unanimous in testifying that they heard but one blast from the Lady Brenda, and were thus led to suppose it was intended to pass port to port. At all events, the Sabine Sun replied with one blast. This would seem to indicate that the Sabine Sun failed to hear the two-blast signal. Otherwise, in the ordinary course of navigation, unless flagrantly violating rule II, she would not have answered two whistles with one. Upon giving her first signal, the Lady Brenda started her engines full speed ahead, and, after hearing the single whistle from the Sabine Sun, replied with two whistles and kept her speed. The Sabine Sun replied again with one whistle.

After carefully weighing the evidence, I can find no reason to doubt the veracity of the witnesses for the Sabine Sun, and therefore find as a fact in the case that the first signal of the Lady Brenda was heard on the Sabine Sun as but one blast of the whistle. The Sabine Sun, having heard but one whistle and replied with one, immediately put her helm hard aport, throwing her to starboard, and then, hearing the second signal of the Lady Brenda, the master ordered the wheel

put to starboard; but the wheel had become jammed, so that the helmsman could not obey the command, and the Sabine Sun continued on her port wheel to starboard.

It was testified by the witnesses for the Sabine Sun that, when they sighted the Lady Brenda, she was practically dead ahead. The witnesses on the Lady Brenda testified that the starboard side of the Sabine Sun was visible, and that the Sabine Sun was apparently in a position where, if she maintained her course, she would cross the bow of the Lady Brenda unless she changed her course to starboard.

Under rule IV, if they were approaching each other head and head (that is, end on, or nearly so), it was the duty of each to pass on the port side of the other, and in that event the Lady Brenda, having given the first signal, should have given one short and distinct blast of her whistle, and the Sabine Sun should have answered promptly by a similar blast of her whistle, and thereupon the vessels should pass on the port side of each other. But, if the courses of the two vessels were so far on the starboard side of each other as not to be considered as meeting head and head, the Lady Brenda should have given two short and distinct blasts, which the Sabine Sun should have answered promptly by two similar blasts of her whistle, and they should pass on the starboard side of each other.

Inasmuch as the testimony shows that the Sabine Sun appeared on the port bow of the Lady Brenda, it should have been apparent to the pilot and navigating officers that the situation did not come within the latter clause of rule IV, which would justify the signaling by two whistles, and therefore rule VII applied to the situation. That rule is as follows:

"When two steam vessels are *approaching each other at right angles or obliquely so as to involve risk of collision,* other than when one steam vessel is overtaking another, the steam vessel which has the other on her own port side shall hold her course and speed; and the steam vessel which has the other on her own starboard side shall keep out of the way of the other by directing her course to starboard so as to cross the stern of the other steam vessel, or, if necessary to do so, slacken her speed or stop or reverse.

"If from any cause the conditions covered by this situation are such as to prevent immediate compliance with each other's signals, the misunderstanding or objection shall be at once made apparent by blowing the danger signal and both steam vessels shall be stopped and backed if necessary, until signals for passing with safety are made and understood."

Under that rule, the Lady Brenda, as shown by her own witnesses, had the Sabine Sun on her port side, and it was her duty, therefore, to hold her course *and speed.* While the action of the pilot shows that he might be said to have held his course, he obviously did not obey the rule in regard to holding his speed, for immediately upon giving the signal the engines of the Lady Brenda were started full speed ahead.

It being apparent that the two-whistle signal was not understood, the navigator of the Lady Brenda should, upon hearing the one answering blast, have immediately stopped her engines and backed. Both vessels did stop their engines, and backed and dropped anchor, when it was too late to prevent the collision. If the Lady Brenda had maintained her speed of three knots through the water or two knots over the ground, with the ebb tide holding her back, and in favor of her stopping and getting out of the way, it is clear that no collision would have occurred, for, as it did occur, the stem plate of the Lady Brenda collided with the port side of the Sabine Sun about amidships and scraped along her side, which would indicate that, if she had obeyed the rule, she would have been far enough below the Sabine Sun to have avoided the collision. A few feet would have been sufficient.

[1-3] I find that the primary cause of the collision was that the Lady Brenda failed to maintain her slow speed and started full speed ahead, without waiting for an answering passing signal from the Sabine Sun. Where two vessels, coming from opposite directions, are meeting head on, or nearly so, in a channel of sufficient width to give clearance, with no risk of grounding, the port to port passing is the normal and proper method of navigation, and one vessel is not entitled to assume that another will pass her starboard to starboard until two whistles have not only been blown, but answered. The Bilbster (C. C. A.) 6 F.(2d) 954. And, if they are approaching each other as much as 1½ to 2 points, they are to be considered as head and head, and bound to pass port to port under the rule above quoted. The Victory & The Plymothian, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519.

[4] The port to port passing being, therefore, the normal and proper method of navigation, the navigator of the Lady Brenda was put in the position of responsibility of judging whether the ordinary port to port passing was practicable. Having taken that

responsibility, and it being apparent that the Sabine Sun had disregarded her signals, and being in a situation of doubt whether the starboard to starboard passing could be accomplished, it was his duty to stop, reverse, and come to a standstill, until the course of the Sabine Sun had been ascertained with certainty and the risk of collision removed. The New York, 175 U. S. 187, 20 S. Ct. 67, 44 L. Ed. 126; The Munaires (C. C. A.) 1 F.(2d) 13.

Instead of stopping and reversing, and coming to a standstill, as might easily have been done with the ebb tide, the navigator of the Lady Brenda, while a situation from the signals existed which should have put doubt into the mind of a careful navigator, started his engines full speed ahead, with the inevitable result of a collision.

[5] I have not overlooked the fact that the steering gear of the Sabine Sun was jammed, which prevented her from being under such control as might have enabled her in extremis to avoid the collision by putting her wheel to starboard. This was not, however, the direct and proximate cause of the collision, as the Sabine Sun had undertaken the normal and proper method, in navigating, of passing port to port, and the immediate and proximate cause of the collision, the full speed ahead of the Lady Brenda without waiting for an answering signal, preceded the condition caused by the jammed steering gear.

The sole fault for the collision must be placed upon the Lady Brenda, and a decree may be presented for the cross-libelant, with reference to a commissioner to ascertain and report the damages to the Sabine Sun, unless they shall be fixed by the parties by agreement.