## THE SABINE SUN.

## THE LADY BRENDA.

Circuit Court of Appeals, Third Circuit.
May 20, 1929.

No. 3807.

Biddle, Paul, Dawson & Yocum, of Philadelphia, Pa., and Bigham, Englar & Jones, of New York City (T. Catesby Jones and James W. Ryan, both of New York City, and Howard H. Yocum, of Philadelphia, Pa., of counsel), for appellant.

Lewis, Adler & Laws, of Philadelphia, Pa. (Francis S. Laws, of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. The master of the Steamship "Lady Brenda" on behalf of her owner and charterer filed a libel against the Steamship "Sabine Sun," and the Sun Oil Company, owner of the Sabine Sun, filed a cross-libel against the Lady Brenda, each to recover against the other for damages resulting from a collision between the two steam vessels on March 27, 1925, at a point in the Delaware Bay between Miah Maull Shoals and Fourteen Foot Bank. From an interlocutory decree of the District Court dismissing the libel and sustaining the cross-libel on a finding that the sole fault was that of the Lady Brenda, her master has taken this appeal.

Only the two craft were involved in the maneuvers that brought about the collision. They had the bay to themselves. Each was in charge of an experienced navigator; each had a competent helmsman and competent enginemen. Following the habit of collision cases, the testimony as to the signals given, maneuvers made and the reasons suggesting and justifying them was conflicting. As usual, the officers and seamen on each ship told the same story, that is, the story of their own ship. Therefore we shall not repeat the testimony of the personal witnesses but shall regard the ships themselves as speaking.

#### The Story of the "Lady Brenda."

The Brenda, a British built steel screw steamship, 325.1 feet long and 22.2 feet deep, loaded and upward bound, had encountered intermittent fog after entering the bay. At 6:03 o'clock P. M., though still daylight, the

weather became thick. With her engines put slow ahead the ship moved at about two knots over the ground against a strong ebb tide. Her course set N x W, she proceeded at that speed "on her own starboard side of the channel" through a fog which had varying ranges of visibility, sounding her fog whistle all the while, until the Sabine Sun suddenly appeared through the fog about six or eight ship lengths away, that is "not less than half a mile," bearing about half a point on the Brenda's port bow, showing her entire starboard side and green running light and proceeding on a course which crossed that of the Brenda.

No fog signals from the Sun had been heard aboard the Brenda. Suddenly confronted by a situation largely of the Sun's making, as it is claimed, which included the elements of fog, low visibility, absence of fog signals and an on-coming steam vessel about half a mile ahead bearing slightly on her port bow and "proceeding at high speed" to the eastward across the course of the Brenda, the latter ship gave a starboard to starboard passing signal by sounding two blasts of her whistle and put her helm to starboard. The Sun did not reply immediately but, holding her course and speed, crossed the Brenda's course. Then the Brenda put her engines full speed ahead. About half a minute after the Brenda had given the two blast signal and after the Sun had come to bear on the Brenda's starboard bow, the Sun answered by a single blast of her whistle, denoting her non-assent to the proposed starboard to starboard passing. With the Sun then 2½ to 4 points on her starboard bow, the Brenda, regarding a port to port passing impossible, repeated her two blast signal, maintaining her speed at full ahead. Again the Sun replied by a single blast. Realizing the imminence of collision, the Brenda gave a danger signal of three blasts, put her helm hard aport and her engines full speed astern and let go both anchors in an endeavor to bring the ships upon parallel courses and avoid the collision or ease the impending blow. She succeeded in the latter, for the two boats came together with little force, yet enough to dent some plates of the Sun and bend the stem of the Brenda.

### The Story of the "Sabine Sun."

The Sun, an American built steel screw tank steamer, 429 feet long and 31.4 feet deep, light and downward bound at half speed, encountered intermittent showers and haze during which she sounded fog signals at irregular intervals. About 6 o'clock P. M.

shortly after leaving Miah Maull, which was plainly visible four tenths of a mile on her port beam, she set her course S x E ½ E for sea. On passing Buoy No. 11 she sighted the Brenda about three quarters of a mile away "apparently close to the center of the channel," the regular course for inbound vessels, and about dead ahead. The Brenda gave one blast of her whistle indicating her intention to pass port to port, the normal and proper maneuver in the circumstances, and seemed to swing slightly to the starboard. The Sun gave an assenting answer by one blast and put her helm hard aport for a port to port passing. Shortly thereafter the Brenda blew two blasts and was observed to increase her speed and swing rapidly to her port. The master of the Sun was at first inclined to accept this change of passing signals and ordered the helmsman to put her wheel from hard aport to hard astarboard but was informed that the wheel had stuck. Thereupon the Sun answered the Brenda's second signal (two blasts) with another single blast and continued at the same speed on the same course under a hard aport helm. From this it is evident that both vessels were swinging to the westward and coming closer together with danger of collision. Sounding danger signals the Sun reversed her engines and let go her starboard anchor. The collision followed.

After disposing of one or two controverted points we shall decide this case mainly on the Brenda's own story.

The collision occurred between 6:12 and 6:20 o'clock P. M. Although the running lights of both ships had been set, it was still day and light enough for each ship to observe the other in time to exchange proper passing signals and execute passing maneuvers safely. Though the weather was hazy and foggy, it was not so hazy or foggy as to prevent the ships seeing each other concededly when half a mile apart and probably when three quarters of a mile apart. Pilot Rule III. In either case each saw the other at a distance apart where there was no danger of collision and at a time which admitted of certainty of signals and maneuvers. We find, therefore, that after the vessels had sighted each other weather conditions were not a material factor in what followed.

As to the first exchange of passing signals the one thing that is certain is that the Brenda was first to signal. Whether her signal was by two blasts followed by a dissenting single blast reply made by the Sun as the Brenda maintains or by a single blast from the Brenda and an assenting single

blast reply by the Sun as the Sun maintains is not dispositive of the matter, for whether one or the other constituted lawful signals depends upon the positions of the two ships. If the two ships when they sighted each other and came within signalling distance of each other were, as the Sun maintains, "head and head, that is, end on, or nearly so," it was, under Pilot Rule IV, the duty of each to pass on the port side of the other and, accordingly, it was the duty of the Brenda, the ship first giving the signal, to give it by a single blast for a port to port passing, otherwise she would violate the rule and be guilty of the primary fault which ordinarily would end the case. The Victory and Plymothian, 168 U. S. 410, 18 S. Ct. 149, 42 L. Ed. 519. If, however, the two ships were not "head and head" or within the latitude permitted by the definition of that expression but their positions were such that the Sun was on the Brenda's starboard bow and "so far on (her) starboard as not to be considered as meeting head and head," it is possible that the Brenda could, under Pilot Rule IV, have lawfully signalled by two blasts of her whistle for a starboard to starboard passing. While the Brenda says she gave a two blast passing signal, it is clear that she either gave only one blast or, giving two, the Sun heard only one. However that may be, we shall for the moment assume that the positions of the two ships were such as to justify the Brenda departing from the normal rule of navigation and signalling by two blasts for a starboard to starboard passing and that she did so signal. But that is only a justification for the signal she gave. It is not all that was required of her before she entered upon her signalled maneuver. She was required to wait for an assenting answer from the Sun. The Bilbster (C. C. A.) 6 F.(2d) 954; The Munaires (C. C. A.) 1 F.(2d) 13. She received an answer but it was admittedly a dissenting answer. Not satisfied, she signalled again by two blasts, insisting upon a starboard to starboard passing. With such a passing, the Sun, as before stated, was inclined to agree but, being prevented by the jamming of her wheel, answered by the second dissenting signal of one blast. This, too, is admitted. The Brenda, instead of slowing down or stopping until the proper course should be ascertained with certainty and the risk of collision removed, The Munaires (C. C. A.) 1 F.(2d) 13; The New York, 175 U. S. 188–201, 20 S. Ct. 67, 44 L. Ed. 126, drove right on at full speed in the face of what she knew all the time were crossed signals. Margaret v. Manchester Merchant (C. C. A.) 30

F.(2d) 923. This we regard a grave fault on her part; but it was not her only fault. Still assuming that the ships were not head and head and remembering that the Brenda's course was N x W, it follows that if the Sun was at first bearing one half of a point on the Brenda's port bow and heading S x E ½ E, the Sun was, as the Brenda contends, on a course crossing her course and crossing it obliquely. In this situation the Brenda was confronted by Pilot Rule VII which provides that when, as here, "two steam vessels are approaching each other * * * obliquely so as to involve risk of collision * * * the steam vessel which has the other on her own port side (the Brenda) shall hold her course and speed; and the steam vessel which has the other on her own starboard side shall keep out of the way of the other by directing her course to starboard (as the Sun did) so as to cross the stern of the other steam vessel."

"The steam vessel which (in this instance, had) the other on her own port side" when she signalled, was, by her own testimony, the Brenda, and by her own testimony she did not "hold her course," for when she gave the first two blast signal she put her wheel "starboard a little" or "hard astarboard" as the fact might be. At all events she put her wheel to starboard and in doing so did not hold her course but took a course westwardly toward the Sun. Moreover, what is more important, she did not "hold her * * * speed" but shortly after giving the first two blast signal and without waiting for a reply put her engines full speed ahead.

■ The momentary jamming of the Sun's wheel at a time when she was inclined to assent to the Brenda's second two blast signal might have been an unfortunate circumstance. No one can tell what would have happened had it not jammed. But the jamming was not a fault of the Sun or an error in navigation and her inability to follow up her first dissent by an assent to the Brenda's repeated signal for a starboard to starboard passing did not deprive her of her right to observe and follow Pilot Rules IV and VII or her right to expect that the Brenda would do the same; nor did it relieve the Brenda of her duty to observe those rules, nor, by violating them, did it enable her to transform the jamming of the Sun's wheel into the direct and proximate cause of the collision.

■ Having committed two positive breaches of statutory rules of navigation the Brenda must show not only that probably her faults did not contribute to the collision but that they could not have done so. Belden v. Chase, 150 U. S. 674–698, 14 S. Ct. 264, 37

L. Ed. 1218; The Edward Smith (C. C. A.) 135 F. 32, 35; State of Maryland v. Standard Oil Co. (D. C.) 8 F.(2d) 514. We are constrained to find that she has not sustained that burden.

The decree is affirmed.