## A. H. BULL S. S. CO. v. CHESAPEAKE S. S. CO. OF BALTIMORE CITY.

### No. 4398.

Circuit Court of Appeals, Fourth Circuit.

Jan. 9, 1939.

Rehearing Denied.

Robert W. Williams and Frank B. Ober, both of Baltimore, Md. (Ritchie, Janney, Ober & Williams, of Baltimore, Md., on the brief), for appellant.

L. Vernon Miller, of Baltimore, Md. (Marbury, Gosnell & Williams, of Baltimore, Md., on the brief), for appellee.

Before PARKER and NORTHCOTT, Circuit Judges, and H. H. WATKINS, District Judge.

NORTHCOTT, Circuit Judge.

These are cross-appeals from a decision of the District Court of the United States for the District of Maryland, at Baltimore, involving a libel and cross-libel arising out of a collision in the early morning of December 27, 1936, between the Steamship Evelyn, owned by the A. H. Bull Steamship Company, a New Jersey corporation, and the Steamship City of Richmond, owned by the Chesapeake Steamship Company, a Maryland corporation.

The collision occurred in the Fort McHenry Channel, Baltimore Harbor, the weather not being a material factor, wind and tide not being unfavorable and there being no fog. The Evelyn, a general cargo vessel, 326 feet long, 46 feet beam, was proceeding outbound from Baltimore, and the Richmond, a passenger vessel, 277 feet long, 51 feet beam, plying between Baltimore and Norfolk, was inbound.

The libel on behalf of the A. H. Bull Company was filed January 27, 1937, and the cross-libel on behalf of the Chesapeake Company was filed February 8, 1937. Answers were filed to both libels and a hearing was had in April, 1938, at which a number of witnesses were examined on behalf of both the libelant and the cross-libelant.

At the conclusion of the hearing the judge below rendered an opinion in which he made a finding of facts and held both vessels at fault. On June 22, 1938, an interlocutory decree was entered in accordance with the conclusion reached in the opinion, dividing the damages and referring the cause to a commissioner to ascertain the damages of the respective parties. From this decree these appeals were brought.

The collision occurred in a narrow, well marked channel, leading into Baltimore Harbor. The two vessels were about one mile and a half apart when they sighted each other and the navigation of neither vessel was hampered by wind or tide or the presence of any third vessel. The visibility was about two miles and the speed of the Evelyn was fixed at about four miles an hour and that of the Richmond at about fifteen miles an hour.

The evidence was contradictory to a great degree. It is admitted, however, that on sighting the Evelyn the Richmond gave one blast of her whistle, her navigator contending that he started to give two blasts but was interrupted by one blast of the Evelyn's whistle. The one blast given by the Richmond called for a maneuver contrary to the one actually made by her. She had already started to go to port, whereas one blast indicated a starboard movement, or a red-to-red passing.

The judge below found from the evidence that the Richmond did not slow down until within the last minute before the accident; rejecting testimony given on her behalf to the effect that her speed had been reduced two or three minutes before the collision. There was no entry in the engine room log, of the Richmond, of any slowing down before the accident.

On hearing the single blast from the Richmond the navigator of the Evelyn or—

dered full speed ahead and started to port. This confusion resulted in the collision.

From the mass of contradictory evidence the judge below found the Richmond at fault for two reasons: First, because she was navigating the channel at practically full speed in violation of the narrow channel rule and, second, because while already having started to go to port she gave one blast indicating a starboard movement and continued at full speed until just before the collision occurred.

The judge below also found the Evelyn to be at fault for two reasons: First, because she was not far enough over on her side of the narrow channel at the time she was sighted by the Richmond and, second, because when she heard the blast from the whistle of the Richmond she ordered full speed ahead.

We are of the opinion that there was substantial evidence to support all the findings of the trial judge. There is no doubt that the Richmond was going at excessive speed in violation of the narrow channel rule and the evidence clearly supports the finding that the Richmond gave one blast of her whistle then executed a maneuver contrary to that signal.

That the Evelyn was at least in the middle of the channel when she should have been farther over on the west side is supported by the great weight of the evidence.

Inland Rule, Art. 25, 33 U.S.C.A. § 210, provides: "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."

It is also true that the Evelyn after having, as stated by the judge below, assumed a position of possible danger both to herself and to the other vessel, ordered full speed ahead when she should have maneuvered from that position at slow speed.

■ The situation demanded that both vessels navigate the channel where the collision occurred with at least some degree of caution. This court has held that ten or twelve miles an hour is excessive speed in the Fort McHenry Channel. The Acilia, 4 Cir., 120 F. 455. There the court said [page 458]: "Full speed in these dredged channels, when about to pass other vessels, is undeniably a fault which increases every risk of navigation. Appleby v. The Kate Irving (D.C.) 2 F. [919], 924."

While, as stated by the judge below, it seemed to be the custom to violate this rule yet the fact that the rule was more honored in the breach than by the observance does not justify its violation. Custom no matter how long persisted in cannot make dangerous procedure safe.

It is evident that had both vessels been navigating the channel at a proper rate of speed, each on its own side of the channel, a port to port passing was called for.

Pilot Rule 1, 33 U.S.C.A. § 203 provides: "When steam vessels are approaching each other head and head, that is, end on, or nearly so, it shall be the duty of each to pass on the port side of the other; and either vessel shall give, as a signal of her intention, one short and distinct blast of her whistle, which the other vessel shall answer promptly by a similar blast of her whistle, and thereupon such vessels shall pass on the port side of each other."

■ As was said by the Supreme Court in the case of The Victory & Plymothian, 168 U.S. 410, 18 S.Ct. 149, 153, 42 L.Ed. 519: "It has often been held, as a general rule of navigation, that vessels approaching each other in narrow channels, or where their courses diverge as much as 1½ or 2 points, are bound to keep to port, and pass to the right, whatever the occasional effect of the sinuosities of the channel."

See, also, The Sabine Sun, D.C., 21 F. 2d 121, affirmed 3 Cir., 33 F.2d 42. The Belleville, 2 Cir., 92 F.2d 433.

■ It was the duty of both vessels when confusion became apparent to order full speed astern and to blow danger signals. Neither vessel did this until too late to avoid the collision. As was said by the Supreme Court in the case of The New York, 175 U.S. 187, 20 S.Ct. 67, 75, 44 L. Ed. 126: "The lesson that steam vessels must stop their engines in the presence of danger, or even of anticipated danger, is a hard one to learn, but the failure to do so has been the cause of the condemnation of so many vessels that it would seem that these repeated admonitions must ultimately have some effect. We cannot impress upon the masters of steam vessels too insistently the necessity of caution in passing or crossing the course of other vessels in constricted channels."

The judge below was right in finding both vessels at fault and the decree of the court below is affirmed.

Affirmed.

On Petition for Rehearing.

It is pointed out in the petition for rehearing that the court was in error in stating, "on hearing the single blast from the Richmond, the navigator of the Evelyn ordered full speed ahead and started to port." It is true that the navigator of the Evelyn, on hearing the single blast from the Richmond, started to the right and the opinion will be changed to so read. This change in no way affects the holding in the opinion that the confusion resulted in the collision.

It is also urged in the petition that the opinion of the court held that the Evelyn was navigating the Ft. McHenry channel at an excessive rate of speed. A careful reading of the opinion shows that the Evelyn was held to be at fault for two reasons: First, for not being far enough over on her proper side of the channel; second, for ordering full speed ahead after having "assumed a position of danger." At no place in the opinion of this court is any fault attributed to the Evelyn for excessive speed prior to the emergency that arose. What was said as to the navigation of the channel at excessive speed referred to the Richmond.

The petition will be denied.