## THE JEMSON NO. I.

### THE GREENE.

### THE CHOCTAW.

#### Nos. A. 15963, 15888.

District Court, E. D. New York.

April 17, 1941.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libellant Matton Oil Transfer Corporation and Tug Choctaw.

Purdy & Lamb, of New York City (Edmund F. Lamb, of New York City, of counsel), for claimant.

GALSTON, District Judge.

On January 25, 1940 the Diesel tug Choctaw took the barge Jemson No. 1 in tow at the Asiatic dock in Bayonne, bound for Sewaren, New Jersey. The barge was made fast to the tug on the tug's starboard side, extending ahead of the tug's bow about 150 feet with her stern flush with that of the tug. They got under way about 6:30 P. M. with regulation navigation lights showing on the Choctaw and a white light from the starboard side of the barge. On the way through the Kill van Kull and in the vicinity of Bayonne Bridge, the tow overtook the tug Sarah with a dump scow, passing the Sarah on the Choctaw's starboard side. The Choctaw was favoring the Staten Island shore, keeping close to black buoy 3A on the southerly side of the channel and about 25 or 30 feet off. When the Choctaw was abreast of buoy 3A, the captain observed the Greene which appeared to him to be over on the Shooter Island side and showing a white light and a green light. He said the Greene was favoring her port side of the channel and when first observed was coming around the bend of Shooter Island. In that situation the vessels were in position to pass starboard to starboard. The tide was flood, the weather clear and no wind prevailed. The Choctaw was proceeding at full speed, making somewhat more than 3 miles an hour with the favoring tide. According to Jacobsen's story (the captain of the Choctaw) everything went well until the Greene, at a distance of 300 feet from the Choctaw, took a sharp sheer towards Staten Island, at which time the Greene showed only her red light. The Choctaw blew the alarm and a two-whistle signal. Up to that time Jacobsen had heard nothing from the Greene. Then the Greene responded with an alarm and a

one-whistle signal, said Jacobsen. As the vessels approached he slowed the Choctaw and then stopped, and then rang two bells to go astern and two jingles. Up to that time he had not changed his course. The reversing of the engines tended to pull the Choctaw to port. However, the Greene kept on the sheer course for Staten Island and was side-swiped by the Choctaw about abreast of buoy 5 on the Staten Island side of the channel. Jacobsen contended that had the Greene continued on her course instead of swinging to. her right, the vessels would have passed with a clearance of about 150 to 200 feet. Olsen, a deck-hand on the Choctaw, was stationed on the barge and standing slightly abreast of the pilot house of the tug. In his recital of how the collision took place he corroborated Jacobsen.

The libellant produced an independent witness in the person of Rickards, who was operating the tug J. R. Williams on the night in question. Rickards saw the collision. He too had passed the Sarah and her scow but the Williams was on the starboard side of the channel. He saw the Choctaw and her tow on the extreme southerly side of the channel. He likewise saw the Greene approaching. To him the Greene was showing all her lights, and was heading straight down the channel, but over on the northerly side. He too observed the Greene make a quick turn to starboard when the danger signals were given, and at that time the Greene's green light was shut out. This turn was made when a distance of about 300 feet separated the Choctaw and the Greene.

Captain McLean of the tug Sarah, with a dump scow on the port side, said he was bound for the north side of Shooter Island. He agreed that the Choctaw and her tow had passed the Sarah east of the Bayonne Bridge and on the Sarah's port side. He said that the Choctaw stayed on the Staten Island side of the channel. He was also passed on his port side by the J. R. Williams, and likewise saw the Greene coming from the other direction along Shooter Island, that is to say, along the northerly side of the channel. The Greene and Choctaw were then in position to pass starboard to starboard with a clearance of a couple of hundred feet. McLean also observed the Greene change her course, shutting out her starboard light, and heading across in front of the Choctaw.

The story of the motor vessel Greene as told by Heath, her captain, was that she had left Port Socony partly loaded and proceeded easterly through the Kill van Kull. Heath said that he met a tug boat with a lighter alongside abreast of Shooter Island, which was proceeding westward, and they passed port to port. The Greene was on her own starboard side of the channel. He then observed the Choctaw and her tow approaching from Bayonne Bridge, showing both her red and green light, staff light and head light. At that time they were proceeding head to head. Heath claimed that he blew one whistle and received no reply; and then another whistle and again received no reply. This he followed with an alarm, rang one bell but slowed the Greene down and had intended to reverse but saw that he was too close to avoid a collision; so he put his wheel hard to starboard and rang full speed ahead. He thought by doing so he could clear the Choctaw.

Johannesen, a deck-hand on the Greene, was in the pilot house with Heath. He corroborated his captain.

There is an infirmity in the Greene's story. Her captain says that as he was proceeding on his own starboard side of the channel he observed the red and green lights of a vessel proceeding in the opposite direction, nearly dead ahead, and that this vessel had a tow on her port side. At that time he saw nothing of the tugs Sarah and J. R. Williams. In answer to the question, "Which side of the Choctaw was the Jemson No. 1 on?" he said: "Well I was under the impression. she was on the port side because I never seen her deck lights at any time; outside of that I couldn't say." But the Jemson, it will be recollected, was on the starboard side of the Choctaw, so in all probability the tow which engaged the attention of the Greene's captain was not the Choctaw but was either the Sarah or the John R. Williams.

The Greene, I conclude, was at fault in traveling on the wrong side of the channel and in failing to observe that there were three and not only one tug in the channel ahead of her.

There remains for consideration what fault, if any, was committed by the Choctaw, which contributed to the collision. These vessels were navigating in a narrow

channel, about 400 feet in width. Article 25 of the Inland Rules provides: "In narrow channels every steam vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel." 33 U.S.C.A. § 210.

The Choctaw, by navigating on her port-hand side of the channel, was proceeding in violation of this rule. Lehigh Coal & Navigation Co. v. Compagaie Generale Transatlantique, 2 Cir., 12 F.2d 337, 1926 A.M.C. 819; Marshall Field & Co. v. United States, 2 Cir., 48 F.2d 763; American Scantic Line, Inc. v. Tug B. M. Thomas, D.C., 6 F.Supp. 745, 1934 A.M.C. 391.

The mere violation of the rule, if it did not contribute to the collision, would not be in itself sufficient to hold the offending vessel. The Bellhaven, 2 Cir., 72 F.2d 206; The Deutschland, 2 Cir., 90 F.2d 454. The Choctaw was visible to the Greene but it is very doubtful whether the Greene actually observed the Choctaw despite the fact that all of the latter's lights were plainly visible. Had the Greene proceeded on her course without the admitted swerve to her starboard, the two vessels apparently would have had ample clearance provided. But it is claimed that the Choctaw contributed to the collision by failing to sound signals and that in a narrow channel they are required, when approaching, to pass port to port, as stated in The Victory (The Plymothian), 168 U.S. 410, 18 S.Ct. 149, 42 L.Ed. 519. The Bilbster, 2 Cir., 6 F.2d 954; The Sabine Sun, 3 Cir., 33 F.2d 42. And moreover, the Choctaw was not entitled to navigate upon the assumption of a starboard to starboard passage without having first blown a two-whistle signal for such passing and having obtained assent thereto, relying on Henry Du Bois Sons Co. v. A/S Ivarans Rederi, 2 Cir., 116 F.2d 492.

It is admitted that the Choctaw gave neither a one-whistle nor a two-whistle signal and under the authorities cited her silence was a fault which may well have contributed to the collision. The sounding of either whistle would doubtless have given the necessary warning to the otherwise unobservant Greene.

In the circumstances the damages should be divided. Submit findings of fact and conclusions of law in accordance with the foregoing opinion.