### UNITED STATES v. SMITH et al.
### No. 12131.

Circuit Court of Appeals, Fifth Circuit.
May 19, 1948.

Brian S. Odem, U. S. Atty., and Newton M. Crain, Jr., Asst. U. S. Atty., both of Houston, Tex., for appellant.

M. S. McCorquodale, of Houston, Tex., for appellee.

Before SIBLEY, McCORD, and LEE, Circuit Judges.

McCORD, Circuit Judge.

Charles C. Smith & Company, owner of the Tug, Viva Clare, and the Oil Barges, Joseph W. Smith, and Dave Scruggs, filed this libel in rem against the S. S. Molina Del Rey, and in personam against the United States of America.

The S. S. Molina Del Rey, on June 5, 1943, was involved in a collision with the Libellant's barges, Joseph W. Smith and Dave Scruggs, while these barges were being towed by the Tug, Viva Clare, in the Sabine-Neches Canal near Port Arthur, Texas. Libellant claims both barges were damaged as a result of negligence on the part of the S. S. Molina Del Rey, and those in charge of her, and seeks damages. The Government denies the acts of negligence charged, and in turn charges negligence on the part of the Tug, Viva Clare, and those in charge of her.

The record supports the following conclusions as to the material facts and circumstances surrounding the collision: At approximately 8:25 a. m. on the morning of June 5, 1943, the Molina Del Rey, a 16,-500 ton tanker, was proceeding in a southerly direction down the Sabine-Neches Canal, outward bound to the Gulf. Her master and third mate were on the bridge, and she was being piloted by a licensed local pilot. She was moving under her own power, but was being assisted by the Tug Bertha II, on her starboard hand. The weather was clear, visibility was good, there was little or no wind, and only a slight flow tide.

The Tug, Viva Clare, prior to the collision, was rounding a slight bend to the left in the Canal and proceeding in an easterly direction, towing her two barges tandem style, the Joseph W. Smith being the lead barge of her tow, and the Dave Scruggs trailing in the rear. The overall length of the Viva Clare and her entire tow was approximately 400 feet. Upon sighting the Molina Del Rey, about one-half mile distant near the middle of the Canal, the Tug, Viva Clare, blew a two-blast signal, calling for a starboard to starboard passing. The Molina Del Rey answered shortly thereafter with a four-blast signal, indicating danger, and another one-blast signal, calling for a port to port passing, instead of the starboard to starboard passing, as originally signalled by the Viva Clare. The Tug, however, answered with a one-blast signal, indicating her acceptance of the latter method of passing, as proposed by the Molina Del Rey; she immediately afterwards altered her course sharply to her right, and maintained full speed toward the east or her right bank of the Canal, in an effort to comply with the Molina Del Rey's last signal. The Tug Viva Clare attempted to get herself and tow over to her right side of the Canal in time for the Molina Del Rey to clear her port side. As she was executing this maneuver, the Molina Del Rey at first proceeded without altering her course, but soon began sheering to her port or left side of the Canal, partially out of control. The failure of the Mo-

lina Del Rey to respond properly to her helm at this time was due to the fact that her full load of crude·oil caused her to lay low in the water, and hug the bottom of the Canal. In any event, the Molina Del Rey sheered to her port, directly into the path of the oncoming Viva Clare, in violation of the last signal agreed upon, and at a time when it was impossible for the latter to clear herself and tow. By maintaining full speed, the Viva Clare had managed to reach her right side of the Canal, and get her lead barge, the Joseph W. Smith, lined up behind her, before the bow of the Molina Del Rey, then proceeding toward her left side of the Canal, stove into the Viva Clare's lead barge, the Joseph W. Smith, which in turn was thrown into collision with the Dave Scruggs, causing extensive damage to both barges. The Molina Del Rey was moving at a speed of approximately 4 or 5 knots at the time of the collision. It is practically without dispute that the Viva Clare had cut loose from her barges, and lodged heself and her lead barge on the east, or her right bank, of the Canal immediately prior to the collision, in an effort to escape damage. The amount of the damage to the barges, as stipulated into evidence by the parties, was $16,200.

■ We are of opinion abundant evidence supports the finding of the district court that the collision was proximately caused by the negligence of the Molina Del Rey, and those in charge of her, and not by any fault or negligence on the part of the Viva Clare or her tow. The record leads us unerringly to the conclusion that the negligence of the Molina Del Rey in failing to keep to her starboard side of the channel, after having assumed the responsibility of a port to port passing, and failing to reduce her speed and reverse her engines, when the danger of collision first became apparent, proximately caused the collision and damage to the barges. The Ma-

mei, 3 Cir., 152 F.2d 924, 926; Petterson Lighterage & Towing Corporation v. New York Cent. R. Co., 2 Cir., 126 F.2d 992, 994; Giove v. The M. F. Elliott, 5 Cir., 27 F.2d 331.

The Government's contention that libellant's alleged violation of the Narrow Channel Rule requires an apportionment of the amount of damage is without merit. Title 33 U.S.C.A. § 210; Giove v. The M. F. Elliott, 5 Cir., 27 F.2d 331. Libellant was guilty of no negligence, either by violating any statutory rules of navigation, or otherwise, which would justify or warrant a division of damages. Cf. A. H. Bull S. S. Co. v. Chesapeake S. S. Co., 4 Cir., 101 F.2d 599; Lie v. San Francisco & Portland S. S. Co., 243 U.S. 291, 37 S.Ct. 270, 61 L.Ed. 726.

■ In view of the stipulations, pleadings, and admissions by Government counsel in the record, to the effect that jurisdiction and service had been conceded,[1] and that the Libel was properly brought under the suits in Admiralty Act, 46 U.S.C.A. § 741 et seq.,[2] we do not think the Government is now entitled to raise these issues, especially since they were not properly preserved by assignment of error. It follows that interest was properly allowed from the date this Libel was filed, on September 1, 1944.

We find no reversible error in the record, and the judgment is therefore affirmed.

SIBLEY, Circuit Judge (dissenting).

I think both vessels were at fault, and the damages ought to be divided. The Molina del Rey was a large Liberty Ship, 526 feet long, 68 feet beam, loaded to capacity and drawing 31 feet and ten inches of water aft, and a little less forward. She was going south in a dredged channel supposed to be 33 to 34 feet deep, which was not straight,

---

[1] The District Court, in its findings of fact and conclusions of law, stated: "* * * At the outset, questions of jurisdiction were raised by the Government, but it is now conceded that this Court has jurisdiction of the suit in personam against the Government." Government counsel did not take any exception to this finding of the Court.

[2] On the trial, Government counsel in response to Libellant's proposal for a stipulation concerning the status of the "Molina Del Rey", stated: "I do not think it is material to this case because we have plead that it came under the Admiralty Act. We admitted that. I do not see that whether it comes under Public Vessels or not is an issue in this case."

but bent to her starboard around to where the Viva Clare entered it, and just beyond that bent sharply to port. There was a submerged wreck ,with only 18 feet of water over it, opposite where the Viva Clare was entering. The main channel was about 400 feet wide. Because of her length, and these turns, the Molina was using her engines, assisted by a tug with a hawser to her bow. Her momentum would carry her to the outer part of the curve, her port, where also the water might be expected to be the deepest. She would have to come across to the other side to find depth and leave the wreck to her port, and then make a hard turn to port. The Viva Clare was under no necessity as to water, being able to pass easily over the wreck and in any part of the Canal. She was almost still when the signals were exchanged, and could have stopped. The Molina because of her size and weight, and being under greater headway, was difficult to manage and difficult to stop.

The decision below was rested mainly on the testimony of the Viva Clare's Captain Turner, as was the argument for appellee in this Court. According to Captain Turner he was proceeding along the branch canal on its port side, and hugging the point as he turned northward up the main channel, intending to follow its port (to him) side. This of course was contrary to the narrow channels rule. Each vessel saw the other as the Viva Clare slowly rounded the point. The Viva Clare gave a two blast signal indicating she desired a starboard to starboard passage. They were then about a half-mile apart, and had fifteen minutes to maneuver. The Molina, having to pass the wreck on her port, and then to turn very sharply to port to follow the channel, thought it best that the Viva Clare should proceed across the wreck to the east side of the channel, making a port to port passage, so she gave a danger signal and one blast. Capt. Turner agreed with one blast. He testifies that he had towed the Liberty Ships and knew their size and draft, and just the course that the Molina had to follow, and knew that the situation would be tight, but thought that he could beat the Molina across the channel; and put on full speed ahead across her course. He got across, and all would have been well except that the Molina was unable to steer to her starboard, but sheered off to her port. Captain Turner himself tells vividly what happened to her, as he observed it. "Any boat, small or large, making any speed in shallow water has a suction to the bottom. In other words, if the boat or ship is close to the bottom, it will form a suction. You can't steer after that happens. If a vessel like the Molina del Rey is in motion at speed, and had a suction to the bottom and took a sheer, she must be stopped. The tug could not pull her around." The Molina did take a suction and would not answer her helm, and took a sheer to port. They tried to stop her by reversing her engines, but the rotation of the screw threw her further to port. The tug strained to pull her to starboard, and the hawser broke. She threw out her anchor, too, but it did not stop her in time. Captain Turner's concluding testimony was that "After the Molina made the sheer she could not change her line either. It was an unavoidable accident." I think Turner did all he could after the Molina became unmanageable, as he observed her, and he himself says that she did all that she could do then. The fault reaches farther back, when they agreed to the port to port passage after a danger signal, each knowing that the other would have to cross the channel to make it, and each knowing the handicap that the large vessel was under, and the likelihood of the very thing happening that did happen. Turner knew the depth of the channel, the size of the Molina, could see that she was deep in the water, and of course knew that tankers would come down the channel from Beaumont only fully loaded. Each vessel took a known risk, and both it seems to me were at fault in doing so. Turner could have stopped where he was and answered with a danger signal, instead of accepting the risk of a race across the known course of the Molina. I think both ships were at fault in running into known danger.